Edward L. **THOMPSON**, Defendant below, Appellant,

v.

**STATE** of Delaware, Plaintiff below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 11, 1978.

Decided Feb. 14, 1979.

Carl Schnee, Wilmington, for defendant below, appellant.

Eugene M. Hall, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant, Edward L. Thompson, appeals his jury convictions in the Superior Court of rape in the first degree, kidnapping in the first degree, and two counts of possession of a deadly weapon during the commission of a felony. He contends the Trial Court erred by failing to instruct the jury in accordance with Lord Hale's caution and on the element of "voluntary social companion"; by not ordering a State's witness to undergo a polygraph examination or psychiatric evaluation; by refusing to permit a view; by not permitting defense counsel to question a private investigator on appropriate police procedures; by refusing to grant defendant's request for a mistrial; by permitting prejudicial comments by the prosecutor on summation; and by permitting the prosecutor to cross-examine defendant on defendant's asserting his constitutional right to counsel. Finding no reversible error in any of these contentions, we affirm.

## I

The victim, walking from her home to a nearby convenience store, was approached by a man driving a yellow sports car with a black convertible top. He stopped and offered her a ride to the store which she accepted. After the victim had entered the car, the man produced a knife, drove to a secluded wooded area and raped her. Afterwards, the assailant released her near the same convenience store and she ran to the home of a neighbor to whom she related what had happened. The neighbor called the victim's husband and the police.

When the police arrived, the victim gave detailed descriptions of her assailant and his car. She initially told police that she was forced into the car at knife point, but later, prior to trial, changed her statement indicating that she had entered the car voluntarily. She explained that she had lied initially because she feared her husband would be angry with her if he knew she voluntarily had accepted a ride with a stranger.

When the police went to defendant's residence, they observed both defendant and his car, recognizing them from the victim's descriptions. The police gave defendant his *Miranda*[1] warnings and, upon their request to search his car and to photograph him, defendant declined, stating that he wanted to contact an attorney. After the victim positively identified defendant as her assailant, from a photographic display, the police returned and arrested him. Defendant claims alibi.

## II

Defendant first contends that the Trial Court erred by failing to instruct the jury with the caution of Lord Hale because the victim's testimony was not corroborated, the evidence was conflicting, and the circumstances cast doubt upon her credibility. We disagree.

The caution of Lord Hale is derived from the writings of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench from 1671 to 1676, who felt that because rape is an accusation easily made but difficult to disprove, the jury should exercise extreme care and vigilance in determining a defendant's guilt or innocence. In the mid-19th century, this proposition was embodied in our judicial system with an instruction to the jury in appropriate cases that it must be satisfied that very essential element in the crime has been proved beyond a reasonable doubt. See, e. g., *State v. Burton*, Del.Ct. Gen.Sess., 1 Houst.Cr.Rpts. 363 (1873); *see also Wilson v. State*, Del.Supr., 109 A.2d 381 (1954), *cert. denied*, 348 U.S. 983, 75 S.Ct. 574, 99 L.Ed. 765 (1955). In *Wilson*, this Court stated:

> "[The caution] embodies a wise precept, and there are many cases in which it is not only appropriate but required. For example, if the woman's testimony is not corroborated and the evidence is conflicting . . . or if the circumstances suggest doubt of the truth of her story, . . . it is held to be reversible error to refuse the charge." (citations omitted)

The present case is not one requiring the cautionary instruction. The victim's testimony is corroborated by ample evidence in the record. Police testified that: (1) They arrested defendant upon the victim's description and positive photographic identification of him and upon her description of his car; (2) They observed defendant with the brand of cigarettes and a cigarette lighter as identified in the victim's statement; and, (3) They observed defendant's car with a gold tassle hanging from the rear view mirror and a medallion affixed to the dashboard, also in accord with the victim's statement.

Nor does defendant's denial of involvement in the crime create the conflict in evidence or doubt as to the victim's credibility which requires the cautionary instruction. Otherwise, Lord Hale's caution would be required in every case in which an accused denies his involvement in a rape, certainly not the rule in this jurisdiction.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant places undue reliance on the victim's inconsistent statements to the police as creating both the requisite conflict in evidence and doubt as to her credibility. We believe that the need for Lord Hale's caution did not arise when the victim voluntarily changed her statement with an explanation reasonable under the circumstances.

Furthermore, we note that the cautionary instruction of Lord Hale originated and necessarily was given when due process protections for the accused in a criminal case were relatively undeveloped, quite unlike today's standards and goals for criminal justice. In the instant case,

> "Defendant was accorded a full measure of modern due process; he stood before the jury represented by counsel, clothed in the presumption of innocence, and shielded by the need for his guilt to be established beyond reasonable doubt ere he could be convicted." *People v. Rincon-Pineda*, Cal.Supr., 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975).

### III

Defendant next asserts that:

■■■ (1) The Trial Court erred in failing to order that the victim submit to a polygraph examination. It is settled Delaware law that in the absence of a stipulation to the contrary, the results of a polygraph examination are inadmissible when offered in evidence to prove the guilt or innocence of a defendant in a criminal case. *Williams v. State*, Del.Supr., 378 A.2d 117 (1977). Accordingly, a Trial Court may not compel the victim in a rape case to submit to a polygraph examination upon the demand of the defendant or upon its own accord. Thus, we find no merit to this contention.

■■■ (2) The Trial Court erred in failing to order that the victim undergo a psychiatric evaluation. The ordering of a psychiatric evaluation is a matter within the discretion of the Trial Court and clearly there was no abuse of discretion in this case.

(3) The Trial Court erred in failing to dismiss the indictment. This contention is apparently premised upon the validity of the two preceding allegations. As to this ground, no error of law appears.

■■■ (4) The Trial Court erred in refusing defendant's request for a view of the car in which the rape occurred. A Trial Court has sound discretion in ruling upon a request for a jury view and may properly deny such a request when a view would serve no useful purpose in illustrating testimony. *State v. White*, Me.Supr., 285 A.2d 832 (1972); *State v. Heald*, Me.Supr., 333 A.2d 696 (1975). In the present case, photographs of defendant's car were admitted into evidence and a view of the car would have had limited value. *Compare United States v. Pagano*, 2nd Cir., 207 F.2d 884 (1953); *Arthur v. Commonwealth*, Ky.Ct. App., 307 S.W.2d 182 (1957). The Trial Court did not abuse its discretion and properly refused defendant's request for a view.

■ (5) The Trial Court erred in refusing to admit into evidence the testimony of a former police officer in regard to the adequacy of police investigation of the rape. Defendant sought to prove that the State should have fully analyzed the victim's clothing so that potential hair and semen comparisons could have been made. He contends that the exclusion of the former police officer's testimony to that effect deprived him of his constitutional rights to due process and compulsory process for obtaining witnesses.

Because alibi was the defense, identity of the victim's assailant was in issue; thus, it appears from defendant's argument that an analysis of the victim's clothing might have revealed certain exculpatory evidence, relevant and material to the issue of identity. However, defendant failed to demonstrate how his witnesses' testimony was relevant and material to that issue. The mere possibility that exculpatory evidence might have been found through a more extensive investigation by the State is an insufficient demonstration.

■ A decision whether to admit testimony under particular circumstances is within the sound discretion of the Trial Judge and will not be reversed absent a

clear showing of an abuse. We find no abuse of that discretion in excluding the former police officer's testimony.

(6) The Trial Court erred in failing to declare a mistrial after the prosecutor asked defendant about his hiring a private investigator to prove his innocence. Defendant alleges that this remark prejudiced him by permitting the jurors to infer his guilt and by suggesting that he had the burden of proving his innocence.

"A mistrial is proper 'whenever . . ., taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.'" *Fanning v. Superior Court*, Del.Supr., 320 A.2d 343, 345 (1974) quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

■■ The Trial Judge is necessarily in a better position than we to observe and determine the effect and possible prejudice of prosecutorial questioning; thus, it is entirely within his discretion to declare a mistrial. *Cf. Rentoul v. State*, Del.Supr., 301 A.2d 284 (1973); III *C. Torcia, Wharton's Criminal Procedure* § 519 (12th ed. 1975).

■■ In the present case, the Trial Judge properly sustained defendant's objection to the prosecutor's line of questioning and he precluded the prosecutor from further pursuing the matter. Consequently, we believe that the Trial Judge properly exercised his discretion in denying defendant's request for a mistrial.

■■ (7) The Trial Court erred in failing to instruct the jury on the issue of whether the victim was defendant's voluntary social companion on the occasion of the crime. The record reveals that the Trial Court did instruct the jury as to this element of first degree rape; therefore, defendant's contention is without merit.

(8) The prosecutor's comments in summation constituted reversible error. Defendant argues that the prosecutor's remarks placed upon him the burden of proving his innocence and were sufficiently prejudicial as to require a new trial.

■■ Under the circumstances, we believe that the prosecutor's remarks about the defendant's evidence were permissible comment upon the strength of defendant's alibi.[2] *See Miller v. State*, Del.Supr., 224 A.2d 592 (1966). Other remarks emphasizing the victim's helplessness were proper because the victim had responded to the prosecutor's question prior to the defense objection and because her response was not stricken from the record.[3]

### IV

Finally, we address defendant's contention that the Trial Judge erred by allowing the prosecutor to cross-examine defendant

---

2. In summation, the prosecutor stated:

"[Defense counsel] said that it's impossible—it would take a contortionist to have gotten over there, even if he was naked. Again a conclusion. Where are his facts? Where is his proof that he couldn't have gotten over there? Where is his proof that if he did get over there, he would have to kick her in the face and have a bloody mess? Again his conclusion, his opinion against the testimony, uncontradicted testimony that that is the way it happened. You haven't heard anyone in this courtroom say it happened any other way than the way [the victim] told you. You haven't heard anyone say that it couldn't have happened, except [defense counsel]. And [he] is entitled to his opinion, but this case must be decided upon the evidence. If he doesn't have any evidence to support his opinion, then it should be ignored and you should be governed by the evidence."

3. On direct examination of the victim:

"PROSECUTOR: . . ., did you ever think you were going to see your children again?
VICTIM: No.
DEFENSE ATTORNEY: Excuse me. I object, your Honor. I think that is an improper question.
THE COURT: What is the basis of the objection?
DEFENSE ATTORNEY: I don't think it leads to any kind of relevant evidence, your Honor. It is designed for prejudicial purposes.
THE COURT: It is a leading question. Objection sustained."
The prosecutor, in summation, remarked:
"You will recall that she said at one point that during that half hour of terror she thought that she would never see her children again."

as to his cooperation with the police at the time of his arrest.

During voir dire examination of a police officer who arrested defendant, the Trial Judge warned the prosecutor about the potential prejudicial error involved in eliciting testimony about defendant's exercise of his constitutional rights.[4] Thereafter, on cross-examination, the prosecutor asked defendant about his cooperation with the police.[5]

4. "THE COURT: What I am concerned about—I think I know where you are heading. I think that is the one thing that I am concerned about, whether a defendant or anybody exercises a Constitutional right, whether any inferences which could be damaging from the exercise of that right should be allowed to go to the jury. For instance, like the exercise of the right against self-incrimination. I am concerned about that.

\* \* \* \* \* \*

PROSECUTOR: . . . It seems to me that someone who has—who was not involved in a rape and had nothing in his car to hide would be more than glad for police to go out there. In fact, they would be out there saying, "Look at my car." By the same token, someone who was not involved in a rape would be more than willing to have their photograph taken. I believe that that is relevant evidence. Any evidence that is relevant should be introduced before the triers of the fact.

THE COURT: That is exactly the point that I think has been raised by your statement. A person should be able to raise the issue of a Constitutional right without adverse implication. In this case the exercise of his rights not to have the car searched and to not have his photograph taken could be, just as you illustrate very vividly, misinterpreted by the jury. Therefore, I will not allow it to go to the jury."

5. The prosecutor asked defendant:

"Q Mr. Thompson, yesterday you testified to the effect that back at the police station you volunteered the search of your car. You consented to that and executed a form. You consented to having your photograph taken, et cetera. Is it your testimony that from the moment that the police confronted you—and that is at your house—that you cooperated with the police and did anything that they asked?

A Yes, I did.

Q You are sure of that?

A Yes, I am.

Q You did everything that the police requested of you from the moment that they talked to you until today?

A When Detective Senior asked me to go to the police station, I said yes, I would go. I went, got my coat. As I was getting my coat, I talked to my sister. My sister is studying law at the University of Wesley. I told her what was going on. She advised me that I should contact a lawyer before doing anything else.

Defense Attorney: May we approach the bench, please?" At this point, defense attorney objected to the line of questioning, but was overruled.

The prosecutor continued:

"Q Mr. Thompson, when the police were at your house the first time, before you were arrested, did they ask you if they could search your car at that time?

A I believe they did, yes.

Q Do you believe it or do you remember it?

A I do remember they did, yes.

Q Do you remember whether or not you gave your permission at that time?

A I asked them if they had a search warrant.

Q What did they say to you?

A They said they did not.

Q Did they ask to look in your car?

A Yes, they did.

Q Did you let them?

A No, I did not.

Q You call that cooperation with the police?

A Not after he read me my rights at the table, no.

Q Did they also at that time ask you whether or not you would submit to having your photograph taken?

A Yes, they did.

Q Did you allow them to do that?

A Yes. I was going.

Q Pardon me?

A I was leaving to go, yes.

Q And something changed your mind?

A My sister, yes.

Q Did you consent to the photographs at that time?

A I called my attorney. I asked the officers if I may call my attorney. They said, "Yes." I called my attorney. They talked to my attorney and then they left.

Q Then what happened? Did you submit to having your photograph taken?

A I talked to my lawyer after that. He did not know what was going on. I did not know what was going on. He told me to wait.

Q Can you answer my question, Mr. Thompson? Did you submit to the photograph or not?

A At what time?

Q When you were first requested before you were arrested, when the police first talked to you.

A No, I did not.

Q But you called your attorney?

A Yes, I did.

Q Now, somewhere along the line you consented to having your photograph taken and

Defendant answered without objection. The prosecutor then asked twice more, in effect, the same question. Defendant again answered without objection, and went beyond the scope of the question, volunteering information concerning events which had occurred at his home after his initial confrontation with police. Defense counsel requested a sidebar and objected to the line of questioning upon the Court's previous ruling that the prosecutor avoid comment upon defendant's exercise of his constitutional rights. The Court overruled the objection on the ground that, without objection to the initial question about defendant's cooperation, defendant's affirmative answer established a basis for impeachment.[6]

■ The State may not use an accused's post-arrest silence for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *see also Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Nor may the prosecution put a penalty on the exercise of any constitutional right, such as the right to counsel. *United States ex rel. Macon v. Yeager*, 3 Cir., 476 F.2d 613, *cert. denied*,

414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973); *see Shantz v. State*, Del.Supr., 344 A.2d 245 (1975). However, not every reference to an accused's exercise of his right to counsel mandates reversal. *Cf. Shantz, supra; People v. Key*, 185 Colo. 72, 522 P.2d 719 (1974); *Doyle, supra*, 426 U.S. at 619, 96 S.Ct. at 2245 n.11, 49 L.Ed.2d 96 (dictum) (post-arrest silence may be used for impeachment purposes where that fact is inconsistent with defendant's trial testimony concerning his behavior following arrest).

■ The State's question upon cross-examination to defendant concerning his cooperation with the police was not impermissible as a matter of law. When defendant affirmatively responded three times without objection to the prosecutor's question, and defendant voluntarily began to explain, without objection, why he subsequently requested an attorney, the Trial Court did not err in allowing the prosecutor to finish cross-examining defendant about the remainder of what occurred at defendant's house.

you consented to having the car searched. Was that after consulting with your attorney?
  A No. That was before.
  Q Well, did you realize or did someone tell you that when you submitted to the search of the car and submitted to the photographs, that at that particular point you were arrested and you really didn't have any choice because if you didn't do it voluntarily, there would have been search warrants for the car and they would have taken your picture anyway, because when you get arrested, mug shots are taken?
  A Repeat that again?
  Q Did anyone tell you or did you realize that when you consented back at the police station after you had been arrested, that you really didn't have any other choice but to consent because of the fact that, number one, you were under arrest and the police were going to take your photograph anyway, and that the police could have obtained a search warrant to search your car?
  A I was told that at the Courthouse, yes.
  Q So, in other words, Mr. Thompson, you didn't volunteer too much, did you?
  A I do not know."

**6.** "THE COURT: The record should reflect that the last side bar concerned an objection made

by Mr. Schnee in response to a question asked by Mr. Hall of the defendant, Mr. Thompson, a series of questions asked by Mr. Hall starting with, 'Did you cooperate with the police,' or words to that effect. There was no objection to that question. The answer came out, 'Yes.' Mr. Hall asked it again. Only after the second time and the second answer, as I recall, was there an objection raised at side bar. Mr. Schnee raised the point that on cross-examination originally it was ruled by the Court that the exercise of Mr. Thompson's Constitutional rights could not be commented on or used in a way whereby the jury could gain unfair inferences from the exercise of those Constitutional rights. Based on that original ruling Mr. Schnee asked me to sustain his objection and foreclose Mr. Hall from any further inquiry along the lines of cooperation with the police. The Court at side bar ruled that the objection would not be sustained. It was overruled on the basis that the answer, without objection, established a basis for impeachment and, therefore, the Court would allow Mr. Hall to continue.
  Let me repeat that the first question was without objection and the Court noted that specifically at the time."

 This Court has recognized that counsel has wide discretion on cross-examination. *Martin v. State*, Del.Supr., 346 A.2d 158, 160 (1975). Furthermore, a Trial Judge has broad discretion in ruling upon the permissible extent of cross-examination, and his rulings will not be disturbed absent a clear abuse of that discretion. II *Wharton's Criminal Evidence* § 431 (13th ed. 1972).

Noting that the Trial Judge was in a much better position than we to evaluate the effect of the proposed cross-examination and, given his explanation for the ruling, we cannot say that the Trial Judge abused his discretion. We find no reversible error.

\* \* \* \* \* \*

AFFIRMED.