James E. HARDIN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 35, 2003.

Supreme Court of Delaware.

Submitted: Sept. 3, 2003.
Decided: Dec. 17, 2003.

Leo F. Ramunno, Wilmington, DE, for appellant.

John Williams, Department of Justice, Dover, DE, for appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices (constituting the Court en Banc).

HOLLAND, Justice:

The defendant-appellant, James E. Hardin, was charged by Indictment with the crimes of Rape in the Fourth Degree and Unlawful Sexual Contact in the Second Degree. Following a trial in the Superior Court, the jury returned a guilty verdict on the charge of Unlawful Sexual Contact in the Second Degree charge. The jury could not reach a verdict on the charge of Rape in the Fourth Degree and a mistrial was granted on that charge. Hardin was sentenced to two years incarceration at Level V, suspended after seven days, with the balance of that sentence to be served at Level III.

Hardin has raised three issues in this direct appeal. His first contention is that the prosecutrix made improper statements to the jury. Second, he argues that the Superior Court erred, as a matter of law, in allowing the conviction to stand because there was insufficient evidence to establish the crime of Unlawful Sexual Contact in the Second Degree. Finally, Hardin submits that the Superior Court erred, as a matter of law, in not giving the jury a "Lord Hale" cautionary instruction, as Hardin's attorney requested.

We have concluded that none of the issues raised by Hardin on appeal is meritorious. Therefore, the judgment of the Superior Court is affirmed.

### Facts

On Friday evening, January 11, 2002, fourteen-year-old Sarah Jackson [1] was babysitting for Patricia Ann Shoemaker's two daughters and Hardin's two sons at Hardin's home. Hardin's wife was out of town attending a wedding that weekend. Jackson had taken care of Hardin's sons on several prior occasions.

Earlier that day, Shoemaker and Hardin and their children attended a motorcross event in Philadelphia. Christopher Eihinger, Shoemaker's then boyfriend, picked up Jackson and took her to Hardin's residence to babysit that evening.

1. This Court has designed a pseudonym to refer to the victim. Supr. Ct. R. 7(c).

Eihinger and Jackson arrived about 7:30 p.m. Shoemaker and the children did not return until after 10 p.m. While returning from Philadelphia, Shoemaker dropped Hardin off at the Pale Dog Tavern. After leaving her children and Hardin's sons with Jackson, Shoemaker and Eihinger joined Hardin at the Pale Dog.

When the tavern closed at 1 a.m., Shoemaker, Hardin and Eihinger returned to Hardin's house. Jackson was seated on the L-shaped living room couch watching television when the trio arrived. That evening, Jackson was wearing a hooded sweatshirt, t-shirt, sports bra, jeans and boots. Ann Shoemaker went upstairs to bed about 2 a.m., when her two-year-old daughter woke up.

At that point, Hardin and Eihinger joined Jackson on the living room couch to watch television. Eihinger testified that he fell asleep on the couch at approximately 4 a.m. Before falling asleep, Eihinger saw Hardin and Jackson playing around and rolling on the living room floor.

According to Jackson, she fell asleep on the couch. She woke up when she felt Hardin's hand inside her shirt. At that time, she was lying on her left side facing the fireplace and television. Hardin was behind her. Hardin's left hand was under her sports bra and he was touching her breast. According to Jackson, Hardin then put his right hand inside her underwear and penetrated her vagina with his finger. Jackson testified that when she became startled, Hardin said, "Kid, go to sleep."

The following morning, after Hardin left for work, Jackson told Ann Shoemaker that something had happened the evening before, but she did not go into detail.

When Jackson's mother picked her up at the Hardin residence that morning, she told her mother that Hardin had touched her. Jackson's mother then called the police. Jackson repeated to Detective Kerstetter her recollection of what Hardin had done to her.

### State's Closing Argument

■ Hardin's first argument challenges as improper several prosecutorial comments during closing arguments and alleges that those remarks denied him a fair trial. With the exception of one rebuttal comment characterizing a portion of the defense closing argument as "laughable," there was no defense objection at trial to any of the other remarks now challenged on appeal. In the absence of a timely objection at trial, any claim of error is reviewed on appeal by this Court for plain error.[2]

■ In her rebuttal closing, the prosecutrix stated:

For the defense to suggest that she casually asked Jim what are you doing, the word "casual" is offensive. It's laughable. Do you think [she] ... felt casual about a man with his hands down her pants with his hand down her pants inside her vagina? Did her testimony indicate she felt casual about it, that it was no big deal? That's why we're here today. And the defense wants you to think about that she was matter of fact about it.

After the prosecutrix completed her rebuttal remarks, Hardin objected to the "laughable" comment and stated:

I don't know if there's a curative instruction, but any reference by the prosecutor to a defense closing argument

---

**2.** *See* Del.Supr. Ct. R. 8; *Clayton v. State,* 765 A.2d 940, 942 (Del.2001); *Trump v. State,* 753 A.2d 963, 964–65 (Del.2000).

assertion being laughable I think is objectionable. It came out. I wanted to stand up and object, but there wasn't anything further on that issue. So I'm preserving my objection. I don't know if there's something you can say, but it is a denial of a right to counsel, if nothing else.

The record reflects that the trial judge agreed that the "laughable" comment by the prosecutrix was improper:

I will say that I had the same visceral reaction when I heard the phrase "offensive and laughable," and I think the word "laughable" was worse. I think it would be appropriate for me to instruct the jury that the characterization "laughable" was inappropriate, and the jury is instructed to disregard it.

After this ruling by the trial judge, defense counsel stated: "That's fine. Thank you." Hardin's jury was then instructed, as follows:

Members of the jury, at the close of the State's rebuttal argument the [prosecutrix] used the term "laughable," quote/unquote, with respect to a characterization of the defense in this case, but I am striking that reference from the record. It was an inappropriate use of the word, and you're instructed to give it no weight or effect whatsoever.

In this appeal, Hardin contends that the "laughable" comment constituted reversible error. Hardin argues that "no instruction could have cured the damage done by the State" and that the trial judge should have declared a mistrial *sua sponte*.

The contention that the trial judge should *sua sponte* have declared a mistrial disregards the fact that defense counsel did not make motion for a mistrial.

The record reflects that Hardin's trial attorney was in agreement with the trial judge's decision to strike the "laughable" reference from the record and to give the jury a curative instruction to disregard the comment. Accordingly, given defense counsel's request for a curative instruction and not a mistrial, the trial judge did not abuse his discretion by not *sua sponte* ordering a mistrial.[3]

■ Hardin contends that several other remarks by the prosecutrix during her closing arguments constituted plain error. Hardin submits that the prosecutrix improperly expressed her personal belief in the defendant's guilt when she stated: "Well, I submit to you, members of the jury, that that is what the State has done. The State has proven its case. And the State has proven to you beyond a reasonable doubt the defendant committed these awful acts."

There is no *per se* prohibition against the use of the first person pronoun in closing argument.[4] For many years, however, this Court has repeatedly stated, that the better practice is to avoid such usage completely and to use such term "the State submits," "the State contends," "it is the State's position."[5] In this case, a fair reading of the context reflects that, notwithstanding the inappropriate use of the personal pronoun, the prosecutrix was arguing that the evidence presented by the

3. See *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

4. See *Clayton v. State*, 765 A.2d 940, 944 (quoting *Trump v. State*, 753 A.2d at 964) (noting that improper comments by the State in its closing arguments constitute plain error only if: (1) credibility is a central issue, (2) the case is close, and (3) the prosecutor's comments are so clear and defense counsel's failure to object so inexcusable that a trial judge has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction).

5. See *Trump v. State*, 753 A.2d at 968.

State was sufficient for the jury to find that the State had proven its case. Accordingly, Hardin has not demonstrated any plain error in this comment.

Hardin challenges several other statements by the prosecutrix in her closing argument where she used the phrase "I submit to you," e.g., "this is not the kind of case I submit to you [where] there's going to be physical evidence." Again, such comments, while unfortunately using the first person singular pronoun were, in context, inartful qualified submissions by the prosecutrix for the jury's ultimate consideration. None of these unobjected-to alleged expressions of personal belief constituted plain error.

■ Finally, Hardin contends that the prosecutrix suggested to the jury that the defense was calling the complaining witness a "liar." The only "liar" reference by the prosecutrix was the statement that the complaining witness should not be considered "a liar because she couldn't see the clock ...." This was not an accusation that Hardin characterized the complaining witness as a "liar." It was an argument that the jury should not regard her testimony as untruthful because she may have been mistaken regarding the time.

In this appeal the State candidly acknowledges that the prosecutrix should not have used either the first person singular pronoun or the "emotionally charged" term "liar." Nevertheless, the State submits that those unobjected-to statements, either individually or collectively, do not amount to plain error sufficient to overturn the jury's verdict.[6] We agree. None of the prosecutorial remarks that are being challenged for the first time on appeal "clearly show manifest injustice."[7]

### Lord Hale Instruction

■ Hardin's next contention is that the Superior Court erred, as a matter of law, in not giving the jury what has become known as a "Lord Hale" instruction as his attorney requested at trial. After the State rested its case, Hardin's defense counsel requested the trial judge to instruct the jury to view with caution the testimony of the complaining witness, Sarah Jackson. The specific instruction that the defense asked to be given to the jury was as follows:

You are instructed that the crimes of Unlawful Sexual Contact Second Degree and Rape Fourth Degree are, generally speaking, easily made and hard to contradict or disprove, even if the Defendant is innocent. It is a character of crime that tends to create a prejudice against the person charged. From the nature of a case such as this, the complaining witness is the only witness testifying directly as to the alleged act constituting the crimes. For these reasons, the law requires that you examine the testimony of the prosecuting witness with caution, consider the testimony in light of all of the circumstances shown and then determine the truth with deliberative judgment, uninfluenced by the nature of the charge.

The defense based its request on a prior decision by this Court in *Wilson v. State.*[8] In *Wilson,* we held that such an instruction was permissible under certain circumstances.[9] The trial judge considered the request by Hardin's attorney, but did not give the jury the cautionary instruction.

---

6. *Compare Robertson v. State,* 596 A.2d 1345, 1358 (Del.1991).

7. *See Robertson v. State,* 596 A.2d at 1356.

8. *Wilson v. State,* 109 A.2d 381 (Del.1954).

9. *Id.* at 392–93.

The caution that rape "is an accusation easily made and hard to be proved, and harder to be defended by the party accused, tho never so innocent" [10] originated from a passage in the writings of Sir Matthew Hale [11] that were published posthumously in 1736.[12] The caution first arose in reference to a rape charge where the victim was an infant witness and, under the law at that time, incompetent to testify.[13] Hale later expanded his caution to include adult victims as well.[14]

When Lord Hale developed his cautionary instruction, rape was a capital offense, *i.e.*, punishable by death.[15] As this Court has noted, Lord Hale's caution arose at a time "when due process protections for the accused in a criminal case were relatively undeveloped, quite unlike today's standards and goals for criminal justice." [16] Indeed,

> "[t]he fundamental precepts of due process, that an accused is presumed innocent and is to be acquitted unless proven guilty beyond a reasonable doubt ... were recognized as desiderata in Hale's era but had yet to crystallize into rights.... The rights of an accused to present witnesses in his defense and to compel their attendance, subsequently

enshrined in the Sixth Amendment, were barely nascent in the 17th century.... Most importantly of all, in the context of a rape case, one accused of a felony in Hale's day had no right whatsoever to the assistance of counsel...." [17]

In Hale's era, therefore, trial on a charge of rape would force "an accused, on trial for his life, to stand alone before a jury inflamed by passion and to attempt to answer a carefully contrived story without benefit of counsel, witnesses, or even a presumption of innocence." [18]

By the late 1760's Lord Hale's caution had made its way to America by way of Sir William Blackstone's *Commentaries on the Laws of England.*[19] "Blackstone urged jurors to receive Hale's caution and to consider whether the witness was of 'good' or 'evil fame,' how quickly the crime was reported, and whether the victim cried out." [20] Nevertheless, it appears that Lord Hale's "caution" did not begin to become adopted by courts in the United States until the mid-nineteenth century.[21]

In 1873, Lord Hale's caution was introduced into the Delaware judicial system

---

10. 1 Hale, *History of the Pleas of the Crown* 634 (1st Am. Ed. 1847).

11. Lord Chief Justice of the Court of Kings Bench from 1671 to 1676.

12. See *People v. Rincon–Pineda*, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247, 254 (1975).

13. See A. Thomas Morris, Note, *The Empirical, Historical and Legal Case Against the Cautionary Instruction*, 1998 Duke L.J. 154, 167–68.

14. *Id.*

15. See David P. Bryden, *Redefining Rape*, 3 Buff. Crim. L. Rev. 317, 363 n. 182.

16. *Thompson v. State*, 399 A.2d 194, 198 (Del. 1979).

17. *People v. Rincon–Pineda*, 538 P.2d at 256–57.

18. *Id.* at 257.

19. See Andrew E. Taslitz, *Race and Two Concepts of the Emotions in Date Rape*, 15 Wis. Women's L.J. 3, 17 (2000).

20. *Id.*

21. *See, e.g., People v. Benson*, 6 Cal. 221 (1856); *State v. Burton*, Del. Ct. Gen. Sess., 1 Houst.Cr.Cas.Rpts. 363 (1873); *Connors v. State*, 47 Wis. 523, 2 N.W. 1143 (1879); *Matthews v. State*, 19 Neb. 330, 27 N.W. 234 (1886).

with an instruction to the jury, in appropriate cases, that it must be satisfied that every essential element in the crime has been proved beyond a reasonable doubt.[22] Over eighty years later, in *Wilson v. State,* this Court stated:

[The caution] embodies a wise precept, and there are many cases in which it is not only appropriate but required. For example, if the woman's testimony is not corroborated and the evidence is conflicting . . . or if the circumstances suggest doubt of the truth of her story, . . . it is held to be reversible error to refuse the charge.[23]

In *Thompson v. State,*[24] this Court again considered the propriety of instructing the jury with Lord Hale's caution. In affirming the trial judge's denial of a defendant's motion for the caution to be given to the jury under the particular circumstances of that case, this Court questioned the continued use of Lord Hale's caution but refused to eliminate the instruction from Delaware's jurisprudence. Instead, this Court held that Lord Hale's caution was not re-

quired in every case in which an accused denies his involvement in a rape.[25]

Since this Court's concerns were expressed in *Thompson,* Lord Hale's caution has grown increasingly out of favor in other jurisdictions.[26] The major movement to abandon the caution began in 1975 with California,[27] closely followed by Iowa[28] and Arizona.[29] Several other courts have subsequently held that the instruction is improper.[30] Additionally, in the 1980s, Colorado,[31] Minnesota,[32] Nevada[33] and Pennsylvania[34] all enacted statutes abolishing Lord Hale's caution as an instruction to the jury.

In *People v. Rincon–Pineda,* the California Supreme Court held that the instruction "now performs no just function."[35] The court noted that, while perhaps reasonable at the time, many of the justifications for Lord Hale's caution were no longer true today.[36] The due process protections that are extant today and that were not in existence at the time of Lord Hale, "suffice of themselves to sap the instruction of contemporary

**22.** *State v. Burton,* Del. Ct. Gen. Sess., 1 Houst.Cr.Cas.Rpts. 363 (1873).

**23.** *Wilson v. State,* 109 A.2d 381, 392 (Del. 1954), *cert. denied,* 348 U.S. 983, 75 S.Ct. 574, 99 L.Ed. 765 (1955).

**24.** 399 A.2d 194 (Del.1979).

**25.** *Id.* at 197.

**26.** Mississippi was the first state to show disfavor to the instruction, doing so in 1872. *See Hogan v. State,* 46 Miss. 274 (1872).

**27.** *People v. Rincon–Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247, 260 (1975).

**28.** *State v. Feddersen,* 230 N.W.2d 510, 514–15 (Iowa 1975).

**29.** *State v. Settle,* 111 Ariz. 394, 531 P.2d 151, 153 (1975).

**30.** *See* Kristine Cordier Karzezis, Annotation, *Propriety of, or Prejudicial Effect of Omitting or of Giving, Instruction to Jury, in Prosecution for Rape or Other Sexual Offense, As to Ease of Making or Difficulty Defending Against Such a Charge,* 92 A.L.R.3d 886 (1979 & Supp.2003).

**31.** Colo.Rev.Stat. § 18–3–408 (1986).

**32.** Minn.Stat. Ann. § 609.347(5)(c)-(d) (West 1987).

**33.** Nev.Rev.Stat. Ann. § 175.186(2) (Michie 1986) (prohibiting instruction that rape accusation is easy to make).

**34.** 18 Pa. Cons.Stat. Ann. § 3106 (Purdon 1983) (prohibiting special scrutiny of victim's testimony).

**35.** *People v. Rincon–Pineda,* 538 P.2d at 260.

**36.** *See id.* at 256–57.

validity."[37] We agree with that reasoning.

Accordingly, we join those courts that have concluded that such a cautionary instruction is no longer appropriate. We hold that the trial judge in Hardin's case properly refused to give the "Lord Hale" cautionary instruction to the jury. We further hold that such an instruction should not be given by Delaware judges in the future under any circumstances. The decisions of this Court to the contrary are overruled.

### Sufficient Evidence Presented

 Hardin's final contention is that the State presented insufficient evidence to support his conviction. It is well-settled law that a victim's testimony concerning alleged sexual contact alone is sufficient to support a jury's guilty verdict.[38] There is no requirement that testimonial evidence be corroborated either by physical evidence or corroborating testimony.[39]

 It is the duty of the jury to determine if the State proved each necessary element of the charges beyond a reasonable doubt.[40] The jury is the sole judge of each witness' credibility and is solely responsible for resolving any conflicts in all of the testimony it hears.[41] The testimony of a sole witness, however, will be sufficient to form the basis for a conviction if the testimony presented by that witness establishes every element of the offense and is found by the jury to be credible. In this case, the record reflects that the State presented sufficient evidence, that the jury found to be credible, to support the conviction in Hardin's case.

### Conclusion

The judgment of the Superior Court is affirmed.

---

37. *Id.* at 256.

38. *Styler v. State*, 417 A.2d 948, 950 (Del. 1980); *see also Mghirbi v. State*, 2000 WL 1011063, *2 (Del.) (ORDER).

39. *Styler v. State*, 417 A.2d at 950.

40. *Tyre v. State*, 412 A.2d at 330.

41. *Pryor v. State*, 453 A.2d 98, 100 (Del.1982); *Tyre v. State*, 412 A.2d 326, 330 (Del.1980).