IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONNIE L. STEELE, | § | |
| | § | |
| Defendant Below, | § | No. 234, 2023 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2108000421(N) |
| | § | |
| Appellee. | § | |

Submitted: February 28, 2024
Decided: April 19, 2024

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

## ORDER

This 19th day of April, 2024, after careful consideration of the parties' briefs, the record on appeal, and after oral argument, the Court finds as follows:

(1) A Superior Court jury found appellant, Ronnie L. Steele, guilty of driving under the influence of alcohol or drugs. Steele appeals his conviction, arguing that there was insufficient evidence to find him guilty. He contends that because his blood was not drawn, the State relied on circumstantial evidence that was not adequate to convict him. We have concluded that Steele's appeal is without merit and, for the reasons stated below, affirm his conviction.

(2) Around 6:30 a.m. on August 2, 2021, a 911 caller found Steele unconscious in the driver's seat of his truck with the engine still running. He was

parked inside a car wash at a Shell gas station in Claymont, Delaware. The Delaware State Police dispatched an officer, Corporal Michael Fiore, Jr., to the scene. Several emergency medical service workers—including emergency medical technicians and paramedics ("EMS workers")—also responded to the scene and arrived at the gas station nearly simultaneously with Corporal Fiore.

(3)     Corporal Fiore testified that upon opening the door of Steele's truck, he and the paramedics found Steele "completely unresponsive, sweating profusely."[1] He observed that Steele had a "hypodermic syringe with a brown liquid substance inside injected into his right hand."[2] And he also told the jury that it appeared that Steele had urinated on himself and that the truck was giving off the "distinct odor of [an] alcoholic beverage."[3] The EMS workers immediately began tending to Steele given his condition.

(4)     While Steele received medical treatment, Corporal Fiore briefly searched Steele's vehicle, looking for his insurance card and vehicle registration. He testified that he did not observe any alcohol, empty containers, or drug paraphernalia other than the needle that he had seen in Steele's hand.[4] In the meantime, the EMS

---

[1] App. to Opening Br. at A27; *see also id.* at A28.
[2] *Id.* at A27. He stated that "[h]e [knew] from [his] prior training and experience that this [was] consistent with heroin." *Id.*; *see also id.* at A38–39 (explaining that Steele's profuse sweating and the needle in his hand indicated "either Fentanyl or heroin" use).
[3] *Id.* at A28.
[4] He also testified that he did not observe any drug paraphernalia in the area immediately surrounding Steele's vehicle. *See id.* at A56. Corporal Fiore testified that the other officer on the

2

workers moved Steele into the back of an ambulance and Corporal Fiore testified that he watched outside of the ambulance as the EMS workers administered intravenous drugs to resuscitate Steele. Once he was alert and responsive, Steele asked the EMS workers to transport him to Saint Francis Hospital in Wilmington. Corporal Fiore explained that he did not collect the syringe that was in Steele's hand as evidence because he assumed it was placed in a needle disposal container by the EMS workers and that, for his own safety, he did not want to "stick [his] hand in a sharps container containing various syringes with bodily fluids[] [and] potentially unknown substances to recover a needle."[5]

(5)     Corporal Fiore spoke with Steele for the first time in a treatment room in the emergency department at the hospital. He observed that Steele was "extremely disorderly," "argumentative," "uncooperative with [himself and] hospital staff," and was generally behaving "belligerent[ly]."[6] He told the jury that during their conversation, he "detected the distinct odor of alcoholic beverage emanating from his breath[,]" heard him slur his speech, and observed that Steele's eyes were bloodshot, watery, and glassy.[7] He also testified that Steele told him that his "head

---

scene, Trooper Ruszkay—who was there to coordinate the towing of the vehicle—would have written a report if he had found anything of import in Steele's car. *Id.* at A52–A54.

[5] *Id.* at A50. The contents of the syringe were never tested. *Id.* at A51.

[6] *Id.* at A34.

[7] *Id.* at A33; *see also id.* at A63–A64.

was spinning from the Narcan"[8] and that he "had [consumed] some vodka a while ago[,]" but he denied that the needle injected into his hand was his.[9]

(6) Corporal Fiore then tried to explain the process by which Steele's blood would be obtained and that he would need Steele's consent to draw his blood on the suspicion that Steele was driving under the influence. Steele refused, and according to Corporal Fiore, "was not comprehending the process" and "[did not] understand how he could be charged with [driving under the influence] if he refused the blood draw."[10] He then read the implied consent form to Steele again.[11] He told the jury that Steele's "response to all of it was 'f[…] you.'"[12] Given Steele's "belligerent and disorderly" behavior and the concerns Corporal Fiore had for his own safety, as well as the safety of both the hospital personnel and Steele himself, he did not obtain a warrant to conduct a blood draw and arrested Steele for driving under the influence.[13]

---

[8] Narcan is a brand name for naloxone, which is a "medicine that rapidly reverses an opioid overdose." *Naloxone DrugFacts*, NATIONAL INSTITUTE ON DRUG ABUSE (Jan. 2022), https://nida.nih.gov/publications/drugfacts/naloxone; *see also Narcan*, DRUGS.COM (Aug. 22, 2023).

[9] *Id.* at A34; *see also id.* at A60.

[10] *Id.* at A34–A35, A37; *see also id.* at A58–A59.

[11] *Id.* at A36. The Delaware State Police utilize implied consent forms "when a person refuses to take any of the chemical tests authorized under 21 *Del. C.* § 2740." *Hicks v. Shahan*, 1994 WL 710881, at *1 (Del. Super. Nov. 14, 1994).

[12] App. to Opening Br. at A36.

[13] *See id.* at A36–37.

(7) On March 28, 2022, Steele was indicted for driving under the influence, driving without a valid license, and no proof of insurance. On January 24, 2023, Steele filed a motion to suppress the statements he made to Corporal Fiore at the hospital. On February 17, 2023, the court denied Steele's motion to suppress and amended his indictment to drop the charges of driving without a license and no proof of insurance.[14] On February 21, 2023, the Superior Court held a one-day trial. The State's only witness was Corporal Fiore. During the trial Steele did not move for judgment of acquittal. Steele was found guilty and was sentenced to five years of imprisonment at Level V, suspended after six months for one year of Level III probation.[15] On June 6, 2023, Steele filed the present appeal.

(8) On appeal, Steele contends that there was insufficient evidence to support his conviction and that no rational trier of fact could have concluded beyond a reasonable doubt that he was driving under the influence of alcohol or drugs. Specifically, he argues that "the State relied solely on a [police officer's] unconfirmed suspicions, speculation, and observations made after Steele received treatment[.]"[16]

---

[14] *Id.* at A3 (Superior Court Docket).
[15] *See* Opening Br., Ex. B (Sentencing Order).
[16] *Id.* at 2.

(9)     We review Steele's claim for plain error, because he failed to raise the issue below by way of a motion for judgment of acquittal.[17]  To find plain error, the error complained of must be so clearly prejudicial to a defendant's substantial rights that it jeopardizes the fairness and integrity of the trial process.[18]

(10)     We find no plain error here.  The State presented sufficient evidence such that a reasonable trier of fact could convict Steele of driving under the influence of drugs or alcohol.  "An insufficiency of evidence claim must fail if '*any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt.'"[19]  When making such a determination, we do not distinguish between direct and circumstantial evidence.[20] And when the determination hinges on witness credibility, we do not substitute our opinion for that of the trier of fact.[21]

---

[17] *See Swan v. State*, 820 A.2d 342, 358 (Del. 2003), *holding modified by Baker v. State*, 906 A.2d 139 (Del. 2006) (citing *Monroe v. State,* 652 A.2d 560, 563 (Del. 1995)) ("In the absence of a motion . . . for judgment of acquittal . . ., this Court reviews claims of insufficient evidence for plain error."); *see also Williamson v. State*, 113 A.3d 155, 157–58 (Del. 2015).

[18] *See Kent v. State*, 2021 WL 4393804, at *3 (Del. Sept. 24, 2021) (TABLE) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).  "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious[,] and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." *Wainwright*, 504 A.2d at 1100.

[19] *Hunter v. State*, 815 A.2d 730, 738 (Del. 2002) (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991)); *see also Williams v. State*, 2005 WL 2414375, at *2 (Del. Sept. 29, 2005).

[20] *See Davis v. State*, 706 A.2d 523, 525 (Del. 1998) (citations omitted) ("Evidence of a defendant's guilt may be proven exclusively through circumstantial evidence since this Court does not distinguish between direct and circumstantial evidence in a conviction context.")

[21] *Dryden v. State*, 945 A.2d 594, 2008 WL 555956, at *1 (Del. 2008) (TABLE) (citation omitted).

(11)     Corporal Fiore's testimony lays plain that Steele was exhibiting indicia of alcohol or drug impairment throughout the entirety of their interaction.  At the gas station where Fiore and the EMS workers found Steele, he was unresponsive and sweating profusely, had a syringe sticking out of his hand, was covered in what appeared to be urine, and he smelled of alcohol—all common markers of impairment.[22]  At the hospital, Corporal Fiore observed that Steele had the smell of alcohol on his breath, was belligerent, disorderly, seemingly confused, admitted to drinking vodka at some point before being found on the scene, and refused to consent to blood tests.  Corporal Fiore told the jury that, through his training and experience, all these observations suggested to him that Steele was under the influence of alcohol or drugs.[23]  It is of no moment that this evidence is circumstantial, testimonial in nature, or not corroborated by physical evidence.[24]  It was admissible evidence on which the jury was free to rely.  Steele fails to explain how it was insufficient or how the jury's reliance on Corporal Fiore's testimony constitutes error, let alone plain error.  We affirm.

---

[22] *See, e.g.*, *Bease v. State*, 884 A.2d 495, 499–500 (Del. 2005) (describing common indicia of alcohol impairment such as the admission of prior drinking, an odor of alcohol emanating from someone's person or vehicle, glassy and bloodshot eyes, disorientation).

[23] *See* App. to Opening Br. at A37–A38.

[24] *See Hardin v. State*, 840 A.2d 1217, 1224 (Del. 2003) (citation omitted) ("There is no requirement that testimonial evidence be corroborated either by physical evidence or corroborating testimony. . . . The testimony of a sole witness . . . [is] sufficient to form the basis for a conviction if the testimony presented by that witness establishes every element of the offense and is found by the jury to be credible.").

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice