**Milton TAYLOR, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 554, 2010.**

Supreme Court of Delaware.

Submitted: Aug. 24, 2011.
Decided: Oct. 25, 2011.

---

Jennifer–Kate Aaronson, Esquire, of Aaronson, Collins & Jennings, LLC, Wilmington, Delaware; Joseph A. Gabay, Esquire (argued), of the Law Office of Joseph A. Gabay, Wilmington, Delaware; for Appellant.

Timothy J. Donovan, Jr., Esquire, and Elizabeth R. McFarlan, Esquire (argued), Department of Justice, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS and RIDGELY, Justices, and NOBLE, Vice Chancellor,[1] constituting the Court en Banc.

JACOBS, Justice:

Milton Taylor ("Taylor"), the defendant-below, appeals from the denial, by the Superior Court, of his motion for postconviction relief under Superior Court Criminal Rule 61. Following a trial in March 2001, a jury convicted Taylor of First Degree Murder. On July 6, 2001, he was sentenced to death. On appeal, Taylor raises eight claims of error. Seven of these claim ineffective assistance of counsel and related constitutional violations. The eighth claim is that the trial court erred by refusing to grant Taylor's motion to issue a material witness warrant. Because many of Taylor's claims are procedurally barred and the balance lack substantive merit, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are set forth in this Court's opinion on direct appeal,[2] and in earlier and later Superior Court decisions.[3] Those facts are summarized here only as needed to illuminate the issues raised on this appeal.

On March 23, 2000, Taylor strangled Theresa Williams, his girlfriend, in her apartment, knowing she was pregnant with another man's child. Williams' beaten and bloodied body was found in the apartment, and the police then began searching for Taylor.[4] Two days later, after receiving a tip, the police arrested Taylor at a pay phone on the corner of 9th and Madison Streets in Wilmington. After a search of Taylor's person incident to his arrest, the police discovered a folded piece of paper in the front pocket of his sweatshirt. On that paper was written a confession to Williams' murder, which stated, in part, "Anyway God forgives murderers. So me and [Williams] will be together again but for eternity this time!" After Taylor was indicted for murder, his trial counsel moved to suppress the confession note. The Superior Court denied that motion.

The trial court appointed two public defenders to represent Taylor.[5] As the trial judge later found, "[t]he defense quickly learned the depravity of the offense and the gravity of their client's predicament. They knew Taylor was guilty, and his confession note was authentic and voluntary." Still, Taylor's trial counsel retained a psycho-forensic evaluator "to lead Taylor's mitigation evidence investigation."

Defense trial counsel also employed mental health experts, as well as another investigator, all of whom explored Taylor's personal background. After evaluating Taylor, one of the defense experts, Dr. Alvin Turner, reported to defense counsel that he found no basis for a mental illness defense. Neither did Dr. Carol Tavani, who opined that Taylor was competent to waive his right to offer mitigation evi-

---

1. Sitting by designation pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

2. *Taylor v. State,* 822 A.2d 1052, 1054–55 (Del.2003).

3. *State v. Taylor,* 2001 WL 1456688, at *2 (Del.Super. July 5, 2001); *State v. Taylor,* 2010 WL 3511272, at *2 (Del.Super. Aug. 6, 2010).

4. Taylor was seen in the area of Williams' apartment building on the day of the crime, leading to his identification as a suspect.

5. In this Opinion the terms "counsel" and "counsel's" refer to defense counsel collectively.

dence. Later, the fruits of counsel's investigation were compiled in a mitigation notebook, which counsel presented to the Superior Court trial judge.

At trial, the jury, after being instructed on First and Second Degree Murder, returned a unanimous verdict convicting Taylor of First Degree Murder. That conviction led to the next stage—and the primary focus of this appeal—the penalty phase.

On the first day of the penalty hearing, Taylor's trial counsel told the court that "Taylor has consistently maintained that if it came down to the decision between life imprisonment ... or the imposition of the death sentence, ... the latter decision would be more preferable to [Taylor] Mr. Taylor was presented with [a] ... proposed mitigation factor list.... He reviewed each factor. He does not wish to go forward on those mitigating circumstances." Among those mitigating factors were allegations of childhood abuse, which Taylor specifically instructed his defense counsel not to present.

At that point, the Superior Court judge conducted a searching colloquy with Taylor, during which Taylor acknowledged that he had reviewed the submitted mitigation information and was waiving his right to offer it into evidence. During the penalty hearing, defense counsel did, however, with Taylor's permission call the defendant's mother and his aunt to testify. Their testimony was limited primarily to expressing their love for Taylor and "a few humanizing touches."

The jury recommended the death penalty by a vote of 10 to 2, after having found two aggravating factors—the victim's pregnancy and Taylor's prior convictions of violent felonies. The trial judge accepted the jury's recommendation and, after having made his own independent determination, sentenced Taylor to death.

Taylor challenged his conviction and sentence on direct appeal to this Court. At that stage he argued that the police seizure of the confession letter was an unconstitutional search, that Delaware's death penalty statute was unconstitutional, and that his death sentence was disproportionate compared to the results in similar cases. On April 30, 2003, this Court affirmed Taylor's conviction and death sentence.[6] The United States Supreme Court later denied his petition for a writ of certiorari.[7]

His direct appeals exhausted, Taylor then filed a petition for postconviction relief under Rule 61 of the Superior Court Criminal Rules. Taylor's postconviction claims, presented by new postconviction defense counsel, derived primarily from events that occurred during the penalty phase. Taylor claimed that his trial counsel's representation was ineffective. Specifically trial counsel failed to investigate adequately Taylor's personal background, failed to present a mental health defense or mitigation evidence, and failed to object at various critical stages of the proceeding. Taylor's new postconviction counsel also claimed that trial counsel's deficient performance deprived Taylor of his rights under the United States Constitution and also (for certain claims) the Delaware Constitution.

A postconviction evidentiary hearing was held in late 2006 and early 2007. At that stage, Taylor's trial counsel and other witnesses testified. Taylor attempted to call his mother as a witness, but she refused to testify. Taylor moved for a mate-

---

6. *Taylor v. State*, 822 A.2d 1052 (Del.2003).

7. *Taylor v. Delaware*, 540 U.S. 931, 124 S.Ct. 345, 157 L.Ed.2d 237 (2003).

rial witness warrant to compel her testimony, but the Superior Court denied that motion. Taylor also contests that ruling on this appeal.

Taylor's current appeal rests critically upon the postconviction hearing testimony of two newly retained expert defense witnesses, Drs. Edward Dougherty and Jonathan Mack. Dr. Dougherty testified that after meeting with Taylor and conducting a battery of psychological tests, he essentially agreed with the earlier experts' diagnosis that Taylor had an antisocial personality disorder. To that diagnosis, however, Dr. Dougherty added two of his own—attention deficit/hyperactivity disorder ("ADHD") and borderline personality disorder. In his opinion denying postconviction relief, the trial judge declined to credit Dr. Dougherty's conclusions. The court described Dr. Dougherty "as a partisan" who based his opinion in reliance upon, and acceptance of, uncorroborated facts communicated by Taylor.

Dr. Mack's testimony described the results of numerous neuropsychological tests he had performed on Taylor, as well as his separate diagnosis of "Personality Change Due to Brain Damage." Dr. Mack reported, based on Taylor's statements to him and upon confirmatory medical records, that Taylor had a history of head injuries that caused Taylor to believe that the victim, Williams, was "cheating" on him on the day of the murder. Accordingly, Taylor acted "under extreme emotional [distress] ... [and his] ability to conform his behavior to the requirements of the law, as well as to fully formulate the intent to commit murder, were significantly compromised by his above diagnosed diseases of the mind and brain, in conjunction with his extreme emotional arousal at the time, and his self-reported intoxication." The trial judge accepted Dr. Mack's finding of "mild" brain damage, but found unclear "the extent to which the mild brain damage accounts for Taylor's antisocial personality. And, it is even less clear the extent, if any, that the brain damage helps account for Taylor murdering Williams, or anything relating to this case."

In August 2010, following the evidentiary hearing, the Superior Court issued its opinion and order denying Taylor's motion for postconviction relief.[8] This appeal followed.

## TAYLOR'S CLAIMS

 In this Court, Taylor reasserts many of the claims he raised during the postconviction proceeding in the trial court. Additionally, Taylor challenges the Superior Court's denial of a material witness warrant to compel his mother's testimony. We review the Superior Court's denial of a motion for postconviction relief, and the denial of a material witness warrant, for abuse of discretion.[9] To the extent Taylor's claims implicate issues of law, we review those claims de novo.[10]

## I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Taylor's first set of claims are premised on the argument that his trial counsel were ineffective because they failed to conduct an adequate investigation into mitigating factors that should have been presented during the penalty phase. As a

8. State v. Taylor, 2010 WL 3511272 (Del.Super. Aug. 6, 2010).

9. Claudio v. State, 958 A.2d 846, 850 (Del. 2008); Coles v. State, 959 A.2d 18, 22 (Del. 2008).

10. Gattis v. State, 955 A.2d 1276, 1281 (Del. 2008).

consequence, Taylor contends, trial counsel also failed to develop an adequate factual basis to show that Taylor lacked the capacity to waive his constitutional right to present mitigating evidence. Relatedly, Taylor contends that his trial counsel's failure to investigate and present mental health evidence to support an extreme emotional distress ("EED") defense[11] during the guilt phase constituted a separate Sixth Amendment ineffective assistance violation.

Taylor's second set of ineffective assistance claims rests on the premise that his trial counsel's failure to object on four separate occasions was unreasonable and prejudicial. Specifically, Taylor claims that his counsel should have objected to: (1) the admission of prejudicial evidence during the penalty hearing, (2) the trial judge's consideration of evidence that was not presented to the jury, (3) the prosecutor's improper statements made during summation, and (4) the trial court's anti-sympathy instruction to the jury. We first address these two sets of claims.

### A. The Claims of Failure to Investigate

■ Taylor raises three separate claims that flow from trial counsel's alleged inadequate pretrial investigation into Taylor's mental health and personal background.[12] First, Taylor contends that his trial counsel was ineffective in investigating and uncovering mitigating evidence to be presented during the penalty phase of the proceeding. That investigatory failure, Taylor urges, also rendered defense counsel's representation ineffective due to their failure to present an EED defense during the guilt phase.

■ The standard by which we review these claims is set forth in Strickland v. Washington,[13] as most recently elaborated by this Court in Swan v. State.[14] In Strickland, the United States Supreme Court promulgated a two-part test for reviewing Sixth Amendment claims of ineffective counsel. First, the quality of counsel's representation must fall below an objective standard of reasonableness. Second, the defendant must show a reasonable probability that counsel's deficient performance prejudiced the defense.[15]

■ Under Strickland's first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential."[16] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[17] Accordingly, Taylor must:

"[I]dentify the acts or omissions of counsel that are alleged not to have been the

---

**11.** 11 Del. C. § 641.

**12.** Although Taylor failed to raise these challenges on direct appeal, claims of ineffective counsel are generally not entertained by this Court at that stage. Claims of that kind are first considered on the merits on appeal from the denial of postconviction relief. Sahin v. State, 7 A.3d 450, 451 (Del.2010) ("Generally, we do not consider claims of ineffective assistance of counsel in a direct appeal. The reason for that practice, in part, is to develop a record on that issue in a Superior Court Rule 61 post-conviction proceeding.").

**13.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**14.** 28 A.3d 362 (Del.2011).

**15.** Strickland, 466 U.S. at 694, 104 S.Ct. 2052.

**16.** Id. at 689, 104 S.Ct. 2052.

**17.** Id.

result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." [18]

Under *Strickland's* second prong, "the question is whether there is a reasonable probability that, absent the errors, the sentencer [19]—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." [20] A court making this prejudice determination must "consider *all* the relevant evidence that the [sentencing judge] would have had before [him] if [counsel] had pursued a different path." [21] Taylor, not the State, has "the burden of showing that the decision reached would reasonably likely have been different absent the errors." [22] "Our inquiry is therefore objective: what a reasonable [sentencing judge] in these circumstances would have done when confronted with the evidence." [23]

To support his ineffective assistance claims, Taylor argues that trial defense counsel should have interviewed other members of his family and associates, obtained additional medical records, and reviewed certain court records in order to present both an EED defense and an adequate mitigation case. Taylor relies on three United States Supreme Court cases, *Williams v. Taylor*,[24] *Wiggins v. Smith* [25] and *Rompilla v. Beard*,[26] and a Third Circuit Court of Appeals decision, *Outten v. Kearney*.[27] In those four cases, the courts found counsel's performance to be constitutionally deficient. We find those decisions inapposite, however. In this case, counsel's performance far exceeded the substandard level of counsel's performance in the above cited decisions.

In *Williams*, defense counsel failed to conduct an investigation into the defendant's childhood records, based on counsel's erroneous belief that state law barred their access to those records.[28] No such erroneous belief affected counsel's performance here. In *Wiggins*, the United States Supreme Court evaluated defense trial counsel's performance under "the professional standards that prevailed in Maryland in 1989." [29] Here, Taylor neither identifies, nor attempts to apply, any authoritative Delaware standard comparable to the Maryland standard at issue in *Wiggins*.

In *Rompilla*, defense counsel failed to review a critical prior conviction file containing mitigation leads, which counsel

**18.** *Id.* at 690, 104 S.Ct. 2052.

**19.** In Delaware, the "sentencer" is the sentencing judge. 11 *Del. C.* § 4209(d).

**20.** *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052.

**21.** *Wong v. Belmontes,* —— U.S. ——, 130 S.Ct. 383, 386, 390, 175 L.Ed.2d 328 (2009) ("[T]he reviewing court must consider all the evidence—the good and the bad—when evaluating prejudice.") (citing *Strickland,* 466 U.S. at 695–96, 700, 104 S.Ct. 2052).

**22.** *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

**23.** *Swan v. State,* 28 A.3d 362, 392 (Del.2011).

**24.** 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**25.** 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

**26.** 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

**27.** 464 F.3d 401 (3d Cir.2006).

**28.** 529 U.S. at 395, 120 S.Ct. 1495.

**29.** 539 U.S. at 524, 123 S.Ct. 2527.

knew the prosecution would use to prove aggravating factors.[30] That file contained "a range of mitigation leads that no other source had opened up," and would have prompted "[f]urther effort [that] would presumably have unearthed much of the material postconviction counsel found." [31] Instead, defense counsel relied on statements by the defendant and his family that no mitigating evidence existed.[32] The United States Supreme Court held that such reliance did not excuse counsel from their duty to review the prior conviction file, which would have spurred a wider mitigation inquiry.[33] Here, in contrast, the mitigating evidence in the prior conviction files was not relevant to or probative of the new (postconviction) experts' evaluation of brain damage, ADHD and borderline personality disorder.[34] Nor would the (arguably) mitigating evidence about Taylor's prior convictions that those files did contain have changed a reasonable sentencing judge's ultimate sentence.[35]

Lastly, in *Outten*, the Third Circuit held that defense counsel's representation was ineffective because counsel had neither obtained nor independently reviewed available school and medical records, and had relied solely on conversations with the defendant and his mother.[36] In Taylor's case, trial counsel performed an independent investigation that far exceeded the scope of the investigation conducted in *Outten*.

New postconviction counsel also rely on the 1989 American Bar Association Guidelines [37] to support Taylor's current position. The Guidelines state that defense counsel's duty to investigate is unaffected by uncooperative clients who express a desire not to present mitigating evidence.[38] The Guidelines, however, are not the applicable constitutional standard. Indeed, the United States Supreme Court has declined to adopt any "set of detailed rules" as a standard for defining the reasonableness of counsel's performance under *Strickland*.[39] This Court, moreover, has rejected criminal defendants' claims of ineffective assistance of counsel in cases where from the outset those defendants had im-

---

**30.** *Rompilla*, 545 U.S. at 383–93, 125 S.Ct. 2456 ("[S]earching for old records can promise less than looking for a needle in a haystack, when a lawyer truly has reason to doubt there is any needle there.... But looking at a file the prosecution says it will use is a sure bet: whatever may be in that file is going to tell defense counsel something about what the prosecution can produce.").

**31.** *Id.* at 390–91, 125 S.Ct. 2456.

**32.** Defense counsel also relied on three mental health experts, whose reviews revealed "nothing useful." *Id.* at 382, 125 S.Ct. 2456.

**33.** *Id.* at 389, 125 S.Ct. 2456.

**34.** Taylor does claim that trial counsel should have obtained more records that would have revealed at least some mitigating evidence now presented. The reasonableness of trial counsel's documentary investigation generally is addressed *infra* note 41 and accompanying text.

**35.** *See Swan v. State*, 28 A.3d 362, 390–93 (Del.2011). Specifically, regarding his 1993 conviction of First Degree Robbery—a violent felony and statutory aggravator—Taylor "admitted his involvement but said that he was not the individual that dragged the woman on the ground causing injury."

**36.** *Outten v. Kearney*, 464 F.3d 401, 416 (3d Cir.2006).

**37.** 1989 American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.

**38.** *Id.*, commentary to Guideline 11.4.1, ("Counsel's duty to investigate is not negated by the expressed desires of a client.").

**39.** *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052 (1984); *Bobby v. Van Hook*, — U.S. —, 130 S.Ct. 13, 16–17, 175 L.Ed.2d 255 (2009).

posed limits on their lawyers' freedom of action.[40]

The record before us establishes that, despite Taylor's insistence on presenting no mitigating evidence, trial counsel conducted a diligent investigation into potential mitigating factors on their client's behalf. As the Superior Court found, "trial counsel considered and explored different avenues of action .... [but] [u]nfortunately for them and for Taylor, trial counsel were stymied at every turn." More specifically, Taylor's trial counsel retained a psychiatrist and a psychologist, multiple psycho-forensic evaluators, and a pastoral counselor. The investigation included interviewing Taylor's family members and gathering his school and Division of Family Services ("DFS") records, among other information sources.[41] To the extent those experts did not have access to records that now are currently available, the trial court found that "that was due more to the records' not being available and less to trial counsel's having been derelict...." The court further found that even with those records in hand, the original defense experts "largely stand by their pretrial opinions."

Taylor insists that his trial counsel should have, but did not, consider other avenues of inquiry. The postconviction hearing testimony of his trial defense counsel sharply controverts that claim.

Although Taylor instructed his trial counsel to pursue an "all or nothing actual innocence" defense and present no mitigating evidence, counsel nonetheless retained two experts who questioned Taylor's truthfulness about possible mitigating factors. Trial counsel also strived to "tease" out an EED defense for Taylor, and explored potential defenses based on mental illness and drug addiction. But, the original defense experts did not detect any brain damage to which Taylor now points as "missed" evidence in mitigation. The trial court also found that the head trauma claims on which Taylor's new experts based their diagnosis were "largely uncorroborated."

Taylor's new postconviction defense experts, Drs. Dougherty and Mack, based their opinions on uncorroborated statements Taylor made to them. Expert opinions based on uncorroborated statements do not automatically render trial counsel's performance deficient. As the Superior Court properly held, trial counsel's mental health investigation and their mitigation investigation are "not rendered inadequate 'merely because the defendant has now secured the testimony of a more favorable mental health expert.' "[42]

■ Taylor's final investigation-related claim of ineffective assistance flows from his waiver of the right to present mitigation evidence during the penalty phase.

---

40. *See, e.g., Shelton v. State,* 744 A.2d 465, 504 (Del.1999) ("[F]rom early on in the penalty phase, [Defendant] made a deliberate strategic decision to limit the mitigating evidence that he would present[,] [Defendant] cannot now claim counsel acted unreasonably when [Defendant] clearly had proscribed the parameters of his defense."). *See also, Amos v. Scott,* 61 F.3d 333, 349 (5th Cir.1995) (Finding no ineffective assistance of counsel when counsel failed to investigate background and character, because defendant had insisted that no witnesses would testify at penalty phase).

41. As the trial court described it, trial counsel's investigator had "some difficulty getting records, especially from the children's departments.... [But] [u]sing her 'amazing' knowledge ... obtained some previously unobtainable files."

42. Even if we reconstructed the record to include the additional expert opinions, Taylor has not met his burden of showing a reasonable probability of a different sentence. *See Swan v. State,* 28 A.3d 362, 390–95 (Del. 2011).

Taylor argues that that waiver should now be invalidated. He claims that his waiver was not knowing and intelligent because of: (i) his mental disorders and counsel's ineffective mental health and mitigation investigations, (ii) defense trial counsel's conflict of interest, and because (iii) the United States and Delaware Constitutions do not permit waiver of a mitigation defense in capital cases. Taylor was required to, but did not, challenge the validity of that waiver on direct appeal. This claim is, therefore, procedurally barred unless Taylor can establish either ineffective assistance of counsel or some other colorable constitutional claim that implicates an exception to the Superior Court Criminal Rule 61 procedural default. As discussed in Section II *infra* of this Opinion, those claims are barred because Taylor has not discharged that burden.

But, even on substantive grounds Taylor's waiver-related ineffective assistance claim fails. Trial counsel sought and reasonably relied on expert opinion regarding Taylor's mental state, including his competence to waive a mitigation defense. Dr. Carol Tavani specifically opined that Taylor was competent to waive a mitigation defense, and trial counsel acted reasonably in relying on that opinion. The trial court found that there was "no legally cognizable 'conflict of interest'.... Trial counsel and Taylor merely had a difference of opinion over what course was in Taylor's best interest as to sentencing." For these reasons, and because trial counsel conducted an objectively reasonable investigation into Taylor's mental health and into other potentially mitigating evidence, Taylor has

not satisfied *Strickland's* first prong on those three claims.

We therefore need not reach or address the prejudice prong issue under *Strickland*—whether a reasonable sentencing judge would have sentenced Taylor differently if Taylor's new experts, Drs. Dougherty and Mack, had testified and if Taylor had not waived a full mitigation presentation.[43] Because trial counsel's investigation and limited presentation of mitigation evidence was reasonable, Taylor's first three *Strickland* claims cannot succeed.

### B. *The Failure to Object Claims*

We turn next to Taylor's ineffective assistance claims based on trial counsel's failure to object on four separate occasions during the trial. Each of those failures, Taylor argues, implicates errors of law that warrant reversal. Again, however, because Taylor failed to raise these claims at trial and on direct appeal, those claims are procedurally barred unless they fall within an exception to Rule 61. Taylor urges that his ineffective assistance of counsel argument operates as a basis to avoid a procedural default under Rule 61.[44]

First, Taylor challenges his trial counsel's failure to object to evidence of non-statutory aggravating circumstances during the penalty phase. That evidence included criminal records which contained information about prior convictions, and also about charges the State declined to prosecute, or withdrew, or that were dismissed. In addition, Taylor attacks trial counsel's decision not to object to the admission, through the testimony of a presentence officer, of presentence reports

**43.** *Swan v. State*, 28 A.3d 362, 390–93 (Del. 2011).

**44.** *Younger v. State*, 580 A.2d 552, 556 (Del. 1990) ("Attorney error short of ineffective assistance of counsel does not constitute 'cause' for a procedural default.") (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The converse is also true: attorney error that constitutes ineffective assistance will constitute relief from a procedural default.

from past convictions, which indicated that Taylor's prognosis was "poor."

This claim fails because even if trial counsel's failure to object were deemed an unreasonably deficient performance—an issue that we do not reach—Taylor has not shown any resulting prejudice, as *Strickland's* second prong requires. As the trial court observed, the evidence to which Taylor objects was only one small part of the State's presentation. Given the overwhelming independent evidence of aggravating factors presented by the State, the disputed criminal records, even if considered by the trial judge, would not create a reasonable probability under *Strickland* that the outcome of Taylor's sentencing would have been different. As the trial court found, the "State presented substantial statutory aggravators, far outweighing the mitigators" and that given those aggravators, "Taylor's complete arrest records and 'poor prognosis' do not account for the jury's recommendation." Those statutory aggravating factors included Taylor's prior convictions of violent crimes and the fact that his murder victim was pregnant. In short, none of Taylor's alleged failures-to-object to non-statutory aggravators would have created a record that would have swayed a reasonable sentencing judge to decide Taylor's sentence differently.[45]

■ Second, Taylor argues that trial counsel were ineffective for failing to object to an alleged *Gardner v. Florida*[46] violation resulting from the trial court's consideration of evidence that Taylor's defense counsel had compiled in a mitigation notebook. In *Gardner*, the United States Supreme Court held that a trial court's consideration of a presentence report that had not been fully disclosed to the defendant or his counsel, deprived the defendant of due process.[47] Here, however, the material at issue—the mitigation notebook—was prepared and submitted to the trial court by Taylor's defense counsel after being reviewed by Taylor. *Gardner* has no application.

In an effort to show prejudice, Taylor points to the trial court's reference in its Findings After Penalty Hearing to an isolated unfavorable description of him as chronically lacking ambition. That reference did appear in the mitigation notebook. But, even if trial counsel had objected to that single notebook reference, the outcome would be the same. As the trial court found, that lone reference "does not change the outcome of the weighing process." Moreover, this argument ignores the court's reason for reviewing the notebook—to seek out all available mitigating evidence to aid Taylor's defense. Because trial counsel's submission of the mitigation notebook was not objectively unreasonable and the trial court's reliance on an isolated unfavorable comment did not prejudice Taylor, this claim satisfies neither *Strickland* prong.

■ Third, Taylor argues that trial counsel's failure to object to a prejudicial rebuttal argument by the prosecutor constituted ineffective assistance. The prosecutor's remark was made in response to defense counsel's jury arguments at the penalty hearing, that Taylor's criminal record was related to, and resulted from, Taylor's substance abuse issues. The prosecutor told the jury that: "The drug problem we recognize, . . . but it shouldn't

---

**45.** *See Swan v. State,* 28 A.3d 362, 390–93 (Del.2011).

**46.** 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

**47.** *Id.* at 362, 97 S.Ct. 1197.

serve as an excuse.... Doesn't serve as an excuse for what he did." Taylor also insists that trial counsel should have objected when the prosecutor stated, referencing Taylor's confession letter, "What does it matter, the fact that the letter that he wrote may have some indication that he was going to commit suicide? ... It has no relevance here." During the penalty phase Taylor's counsel argued that the confession note's (arguably) suicidal expressions were evidence of remorse, which is a mitigating factor. The prosecutor's remarks in response were intended to rebut that latter argument.

In its decision denying postconviction relief, the trial court acknowledged that the prosecutor's remarks could plausibly have drawn objections from defense counsel. The court held, nonetheless, that the prosecutor's arguments were not unfairly prejudicial; therefore, neither was defense counsel's failure to object to them.

Taylor relies on *Lesko v. Lehman*[48] to support this claim of error. His reliance is misplaced. In *Lesko*, the Third Circuit held that the prosecutor's criticism of the defendant for not expressing remorse violated the defendant's Fifth Amendment privilege against self-incrimination.[49] Here, in contrast, Taylor's counsel argued to the jury that his expressed remorse was a mitigating factor. That argument opened the door to rebuttal, and the prosecutorial response at issue was made to rebut that claim, by questioning whether Taylor's arguably suicidal expressions amounted to mitigating evidence. Moreover, these prosecutorial remarks were made in the broader context of the State's presentation of other independent evidence indicating that Taylor lacked remorse. As the *Lesko* court recognized, the defendant "could not claim a fifth amendment privilege against cross-examination or prosecutorial comment on matters reasonably related to his credibility or the subject matter of his testimony."[50]

Nor can Taylor show a reasonable probability, under *Strickland,* that the outcome of his case would have been different had trial counsel objected to both prosecutorial remarks. Those remarks occurred during Taylor's penalty hearing and were properly made to counter mitigating evidence presented by Taylor's counsel. Reconstructing the record by presupposing that those hypothetical objections were made would not change a reasonable sentencing judge's decision on the outcome of the penalty phase.[51] Because in that context Taylor cannot be said to have suffered cognizable prejudice under *Strickland,* the trial court properly denied this ineffective assistance claim.

■ Fourth, and finally, Taylor contests his trial counsel's decision not to object to the trial court's anti-sympathy jury instruction.[52] That claim ignores the

---

**48.** 925 F.2d 1527 (3d Cir.1991).

**49.** *Id.* at 1542.

**50.** *Id.*

**51.** *See Swan v. State,* 28 A.3d 362, 390–93 (Del.2011).

**52.** The court stated:

You are reminded that you must base your answers to the questions on the special in-

terrogatory sheet solely upon the evidence and the instructions as to the law and you must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

While evidence about the victim and about the impact of the murder on the victim's and defendant's families is relevant to your decision, you must remember not to allow sympathy to influence your sentence recommendation in any way. The Court does not charge you not to sympathize with the victim or family or defendant or his family,

fact that an anti-sympathy jury instruction is required under Delaware case law,[53] and that the United States Supreme Court has held that an anti-sympathy jury instruction does not violate the U.S. Constitution.[54] Therefore, trial counsel's failure to object to the court's anti-sympathy instruction was neither objectively unreasonable nor prejudicial under *Strickland*. As the trial court correctly found, for each of Taylor's "failure to object" claims, an objection by trial counsel was either not required or would not have been reasonably likely to change the result of the case, or both.

## II. TAYLOR'S OTHER CONSTITUTIONAL CLAIMS

In addition to, and apart from, his ineffective assistance of counsel arguments, Taylor claims other, separate constitutional violations that factually overlap the ineffective assistance claims. Because Taylor did not raise these claims on his direct appeal, those claims also are procedurally barred absent a showing that they fall within a recognized Rule 61 exception. "When reviewing a motion for postconviction relief under Superior Court Criminal Rule 61, this Court must first consider the procedural requirements of the rule before giving consideration to the merits of the underlying claims."[55]

Superior Court Criminal Rule 61(i)(5) creates an exception to the procedural default rule, in cases where there is "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[56] This provision, often referred to as the "fundamental fairness" exception, is "a narrow one and ... [is] applied only in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal."[57] To invoke this exception, there must be both a claim of a constitutional violation, and a showing that the claim is "colorable" and "undermine(s) the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[58]

Taylor identifies at least five constitutional violations that arguably might be considered under the "fundamental fairness" exception.[59] First, Taylor contends

because it is only natural and human to sympathize. But the Court does charge you not to allow sympathy to influence your sentencing recommendations.

53. *See, e.g., State v. Steckel*, 708 A.2d 994, 1001 (Del.Super.1996) ("In guiding the jury's sentencing deliberations and recommendation in the penalty phase of a capital case, the Court is compelled to give an instruction that precludes the consideration of sentiment, conjecture, sympathy, passion, prejudice, or public feeling as both irrelevant and improper.") (citing *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987)).

54. *Brown*, 479 U.S. at 542, 107 S.Ct. 837 (concluding that a jury instruction, which told the jury not to be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice,

public opinion or public feeling" did not violate the Eighth and Fourteenth Amendments).

55. *Shelton v. State*, 744 A.2d 465, 474 (Del. 1999).

56. Del.Super. Ct.Crim. R. 61(i)(5).

57. *Younger v. State*, 580 A.2d 552, 555 (Del. 1990) (citations omitted).

58. Del.Super. Ct.Crim. R. 61(i)(5).

59. Taylor does not argue explicitly that these claimed violations fall under the "fundamental fairness" exception to Rule 61(i)(5). Instead, he relies exclusively on his failure-to-object ineffective assistance claims as the basis to avoid a procedural default of these claims. Although we will regard the "fundamental fairness" argument as implicit in Tay-

that because a defendant cannot constitutionally waive his mitigation defense in a capital case, his waiver was constitutionally invalid. Second, he contends that the trial court's consideration of the mitigation notebook, which was not provided to the jury, ran afoul of the United States Supreme Court's *Gardner* decision. Third, Taylor urges that the trial court's admission of prognosis testimony based on prior presentence reports violated constitutional rights recognized in *Estelle v. Smith.*[60] Fourth, Taylor claims that the prosecutor's allegedly improper remarks denied him due process and a fair penalty hearing. And fifth, Taylor asserts that the anti-sympathy instruction to the jury violated his constitutional "right to a fair and reliable sentencing determination."

 Taylor's first claim—that his mitigation defense at the penalty hearing was not waivable—is grounded upon *Lockett v. Ohio.*[61] There, the United States Supreme Court held that a capital defendant has a constitutional right to present mitigating evidence.[62] The problem with Taylor's argument, however, is that *Lockett* does *not* hold that that constitutional right cannot be waived. Taylor also relies on an intermediate New Jersey appellate court decision[63] for the proposition that his constitutional right to present mitigating evidence is undermined by allowing a waiver. But, several federal Courts of Appeal have held otherwise,[64] and we find those latter federal decisions more authoritative and persuasive. Taylor also cursorily asserts that his waiver violates Article I, Section 7 of the Delaware Constitution, but provides no textual argument or authority to support that claim.[65] Because Rule 61(i)(5) requires a colorable claim of a constitutional violation, and Taylor has not made that showing, his no-waiver claim fails.

 Taylor next argues that the trial court's consideration of the mitigation notebook, submitted by defense counsel, denied him due process under *Gardner.* That argument, if accepted, would turn *Gardner* on its head. To reiterate, here, unlike *Gardner,* defense counsel was not deprived of the opportunity to view the mitigation material. Rather, defense counsel themselves created and submitted that material to the court. Because *Gardner* is inapposite, Taylor has not raised a colorable constitutional claim. That claim is, therefore, procedurally barred.

 Third, Taylor asks this Court to extend the United States Supreme Court's ·

---

lor's claims of prejudicial constitutional violations, we strongly advise that defense counsel explicitly address all reasons why claims that are arguably subject to treatment as defaulted, should not be deemed defaulted.

**60.** 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

**61.** 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

**62.** *Id.* at 604, 98 S.Ct. 2954 ("[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.").

**63.** *State v. Hightower,* 214 N.J.Super. 43, 518 A.2d 482 (App.Div.1986).

**64.** *Tyler v. Mitchell,* 416 F.3d 500, 504 (6th Cir.2005); *Brecheen v. Reynolds,* 41 F.3d 1343, 1368–70 (10th Cir.1994); *Singleton v. Lockhart,* 962 F.2d 1315, 1323 (8th Cir.1992).

**65.** Taylor's reference to that state constitutional provision is followed by non-constitutional statutory arguments. See, *e.g., Wallace v. State,* 956 A.2d 630, 637 (Del.2008) ("This Court has held that 'conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal.'") (citing *Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del.2005)).

holding in *Estelle v. Smith*[66] to the facts of this case. In *Estelle,* the Supreme Court held that a psychiatrist's opinion of the capital defendant's future dangerousness constituted a Fifth Amendment violation, where that opinion relied on statements by the defendant during a court-ordered competency examination before which the defendant had not been given his *Miranda* rights.[67] Taylor asks us to hold, under *Estelle,* that the trial court's admission of the previous presentence reports' "poor" prognoses of Taylor during the penalty phase violated Taylor's Fifth Amendment rights, because the reports were based on "non-*Mirandized* "[68] statements Taylor had previously made.

Some federal Courts of Appeal have extended *Estelle* to presentence interviews by probation officers.[69] Other circuits have declined to apply *Estelle* to presentence interviews, at least in cases when those interviews were "routine."[70] Notably, Taylor does not claim that the presentence interview conducted in this proceeding, in and of itself, violated his constitutional rights. Rather, Taylor's argument appears to be that the presentence officer's testimony at the penalty phase was constitutionally tainted because the officer described evidence from "previous court-ordered presentence reports"—completed in 1988, 1992, and 1994—based on interviews where Taylor was not read his *Miranda* rights beforehand. In each report, Taylor's prognosis was described as "poor." The State, for its part, nowhere responds to, or addresses, the claimed *Estelle* violation in its brief.

Assuming, but again without deciding, that this constitutional claim violation is colorable, Taylor has failed to show that violation "undermine(d) the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[71] This is not a case "when the right relied upon [was] recognized for the first time after the direct appeal,"[72] nor is it one involving a clear miscarriage of justice. In *Estelle,* the psychiatrist testimony was that the defendant was a "very severe sociopath," "will continue his previous behavior," and that his condition "will only get worse."[73] Here, however, the characterization to which Taylor now objects was simply that Taylor's prognosis was "poor."

We cannot conclude that that evidence undermined the integrity of the proceeding. The presentence investigator's prior prognoses of the defendant as "poor" told the jurors nothing they did not already know, given the undisputed background of Taylor's repeated violent criminal con-

**66.** 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

**67.** *Id.* at 464–69, 101 S.Ct. 1866 (citing *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

**68.** *Miranda,* 384 U.S. 436, 86 S.Ct. 1602 (1966).

**69.** *Jones v. Cardwell,* 686 F.2d 754, 756 (9th Cir.1982).

**70.** *U.S. v. Cortes,* 922 F.2d 123, 126 (2d Cir. 1990) ("The other circuits that have addressed this issue have found that a defendant is not entitled to a *Miranda* warning at a post-conviction presentence interview. We agree that a probation officer need not give *Miranda* warnings before conducting a *routine* presentence interview, and so hold.") (citing, in part, *United States v. Miller,* 910 F.2d 1321, 1326 (6th Cir.1990); *U.S. v. Rogers,* 921 F.2d 975, 979 (10th Cir.1990); *United States v. Jackson,* 886 F.2d 838, 841–42 n. 4 (7th Cir. 1989)) (emphasis added).

**71.** Del.Super. Ct.Crim. R. 61(i)(5).

**72.** *Younger v. State,* 580 A.2d 552, 555 (Del. 1990) (citations omitted).

**73.** *Estelle,* 451 U.S. at 459, 101 S.Ct. 1866.

duct—a background that eventually culminated in murder. Taylor has not met his burden to show a colorable *Estelle* violation that undermined the result of his sentencing. Therefore, this claim is also procedurally barred.

Taylor's final two constitutional claims, regarding the prosecutor's allegedly improper comments and the court's anti-sympathy jury instruction, have been addressed previously in Section I *supra.* Taylor has not shown that the fundamental fairness of his trial was undermined as a result of either prosecutorial comment. And contrary to Taylor's claim that the anti-sympathy instruction violated Article I, Sections 4, 7, and 11 of the Delaware Constitution, our courts have interpreted anti-sympathy instructions as a requirement to guard against improper prejudice or passion being injected into any decision.[74] Taylor's conclusory claims based on the Delaware Constitution are procedurally barred because he has not established any colorable violation that fundamentally undermines the judgment in his case.[75] Because none of Taylor's constitutional claims are colorable, they are procedurally barred.

### III. MATERIAL WITNESS WARRANT CLAIM

■ Taylor's final claim is that the trial court erred by refusing to issue a material witness warrant to compel his mother to testify at the postconviction proceeding. Taylor's mother refused to appear at that proceeding, despite her brief testimony during the penalty phase of the trial. Taylor filed a motion asking the Superior Court to issue a material witness warrant

to compel her testimony, but did not explain how his mother's testimony would help his case.

The trial court denied the motion, but without prejudice to Taylor's right to show that his mother had worthwhile testimony to add. Taylor never availed himself of that opportunity. Nor has he shown that the interests of justice require consideration of this claim on appeal. He therefore waived his right to appeal the court's denial of his motion.[76]

### CONCLUSION

For the above reasons, the judgment of the Superior Court denying postconviction relief under Superior Court Criminal Rule 61 is affirmed.

---

74. *See, e.g., State v. Steckel,* 708 A.2d 994, 1001 (Del.Super.1996); *State v. Ferguson,* 1995 WL 413269, at *7–8 (Del.Super. Apr. 7, 1995).

75. *See, e.g., Wallace v. State,* 956 A.2d 630, 637 (Del.2008) ("This Court has held that

'conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal.' ") (citing *Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del.2005)).

76. Del.Supr. Ct. R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).