# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1605006649 |
| | ) | |
| | ) | |
| ROBERT HEARNE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 6, 2023
Decided: April 17, 2023

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED

Diana Dunn, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Robert Hearne, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se*.

**O'CONNOR,** Commissioner

This 17th day of April, 2023, upon consideration of Defendant's Motion for Postconviction Relief and the record in this matter, the following is my Report and Recommendation.

## PROCEDURAL BACKGROUND

On January 23, 2017, after a four-day trial, a jury found Robert Hearne (hereinafter "Defendant") guilty of seven counts of Rape First Degree, four counts of Unlawful Sexual Contact Second Degree, two counts of Continuous Sexual Abuse of a Child, two counts of Dangerous Crime Against a Child, one count of Sexual Abuse by a Person in a Position of Trust, Authority or Supervision First Degree, and one count of Unlawful Sexual Contact Second Degree.[1] Defendant's victim was his minor daughter.

On March 31, 2017, the Court sentenced Defendant to serve seven natural life sentences – one for each Rape First Degree conviction, and an additional ninety-five years of incarceration, followed by probation supervision, for the remaining convictions. The Delaware Supreme Court affirmed Defendant's convictions on direct appeal.[2]

---

[1] The jury acquitted Defendant of one count Rape First Degree (Count XI), two counts of Unlawful Sexual Contact Second Degree (Counts III and IV), and one count of Sexual Exploitation of a Child (Count XXI).

[2] *Hearne v. State*, 2017 WL 6336910, at *1 (Del. Dec. 11, 2017). On direct appeal, appellate counsel filed a Rule 26(c) brief and a motion to withdraw from representation. *Id.* Defendant submitted written points for the Delaware Supreme Court's consideration on direct appeal. Defendant argued that his ex-wife was employed by the New Castle County Prothonotary, therefore the case should have been assigned to a Superior Court Judge in Kent County or Sussex

On May 23, 2018, Defendant filed a *pro se* Motion for Postconviction Relief,[3] and on January 16, 2020, Defendant, through court-appointed counsel, filed an Amended Motion for Postconviction Relief.[4] In the amended motion, Defendant asserted trial counsel was ineffective for failing to file a Motion for a Bill of Particulars.[5] The Superior Court dismissed Defendant's postconviction claim, concluding trial counsel's decision not to seek a Bill of Particulars was reasonable and strategic.[6] The Court also concluded Defendant could not establish prejudice pursuant to *Strickland v. Washington*.[7]

On May 12, 2022, Defendant filed a Federal Habeas Corpus Petition in the United States District Court for the District of Delaware.[8] While the District Court preliminarily concluded Defendant's Petition was time-barred,[9] it granted

---

County, to avoid an appearance of impropriety. *Id.* at \*2. Second, Defendant argued his daughter's testimony was untruthful and coached by a detective and the prosecutor. *Id.* at \*3. Third, Defendant claimed the jury was not fully informed of the elements of the charged offenses. *Id.* Finally, Defendant asserted the indicted rape charges were defective in that the Indictment described the "exact same offense." *Id.* at \*4. The Delaware Supreme Court concluded, after conducting its own review of the record, that Hearne's appeal was wholly without merit, and the Court affirmed the Judgment of Conviction. *Id.*

[3] Docket Item ("DI") 48, *Pro se* Motion for Postconviction Relief.

[4] DI 69, Defendant's Amended Motion for Postconviction Relief.

[5] *Id.*

[6] *State v. Hearne*, 2020 WL 7093407, at \*3-4. (Del. Super. Dec. 4, 2020), *aff'd*, *Hearne v. State*, 2021 WL 2826451 (Del. July 7, 2021).

[7] *Id.* at \*4. Defendant failed to demonstrate that counsel's failure to file a Motion for a Bill of Particulars was prejudicial, i.e., Defendant failed to demonstrate that there was a reasonable probability he would have been acquitted at trial. *Id. Strickland v. Washington,* 466 U.S. 668 (1984).

[8] See generally *Hearne v. May*, 2022 WL 2064969 (D. Del. June 8, 2022).

[9] *Id.* at \*3 n.5.

Defendant's Motion to Stay Proceedings until Defendant presented all unexhausted habeas corpus claims in State court.[10]

On January 12, 2023, Defendant filed a second Motion for Postconviction Relief in this Court.[11] In this second Motion, Defendant presents several convoluted and overlapping claims. He first raises a statute of limitations claim pursuant to 11 *Del. C.* § 205, arguing that trial counsel was ineffective for failing to raise the statute of limitations as a jurisdictional bar to the prosecution. Defendant argues that "13 of the charges of the indictment fell outside the time limitations,"[12] and therefore the State's prosecution is time-barred.

Defendant next argues the evidence produced by the State at trial, namely the minor victim's testimony, solely consisted of "repressed memory of a victim that has been recovered through psychotherapy."[13] According to Defendant, when a witness's testimony has been recovered through psychotherapy, Delaware law requires the State must provide "some evidence of the 'corpus delicti' independent of such repressed memory."[14] And here, Defendant argues trial counsel was ineffective for failing to require the State to produce evidence independent of his

---

[10] *Id.*
[11] DI 82, January 12, 2023 *Pro se* Motion for Postconviction Relief.
[12] *Id.* p. 4.
[13] *Id.* p. 5.
[14] *Id.*

4

minor daughter's testimony which, he argues, consisted of her memory that was recovered through psychotherapy.

Third, Defendant claims the jury instructions were "inadequate" in that they did not satisfy 11 *Del. C.* § 205(j), and the Court failed to properly instruct the jury on the necessary elements of the crimes charged.[15]

Fourth, Defendant raises generalized claims that trial counsel was ineffective for "lack of attention to details":[16] counsel was incapable of grasping or comprehending the facts;[17] counsel failed to file a Motion for a Bill of Particulars;[18] counsel failed to investigate the applicability of the statute of limitations;[19] counsel failed to conduct an adequate investigation; counsel failed to consider hiring an expert to potentially impeach the complaining witness;[20] and counsel failed to consider alternative defenses.[21]

Finally, Defendant claims the minor victim's testimony was insufficient to support a guilty verdict. Specifically, he argues "none of the evidence presented during the trial can corroborate any elements of the crimes that were brought against the Defendant by indictment."[22]

---

[15] *Id.* p. 11-12.
[16] *Id.* p. 25.
[17] *Id.* p. 14.
[18] *Id.*
[19] *Id.* p. 15.
[20] *Id.* p. 16.
[21] *Id.* p. 24.
[22] *Id.* p. 36.

5

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[23] There is a strong presumption that counsel's legal representation was competent and falls within the "wide range" of reasonable professional assistance.[24] "The standard for judging counsel's representation is a most deferential one."[25] Trial counsel "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."[26] The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.[27] As such, mere allegations will not suffice; instead, a defendant must make concrete allegations of ineffective assistance, and substantiate them, or

---

[23] *Strickland*, 466 U.S. at 694.
[24] *Premo v. Moore*, 562 U.S. 115, 122-23 (2011); *also see Flamer v. State*, 585 A.2d 736, 753-44 (Del. 1990) (citations omitted).
[25] *Premo,* 562 U.S. at 122.
[26] *Id.*
[27] *Id.* (citing *Strickland*, 466 U.S. at 690).

risk summary dismissal.[28]  Deference must be given to defense counsel's judgment in order to promote stability in the process.[29]

To overcome the strong presumption that trial counsel provided competent representation, the defendant must demonstrate that "counsel failed to act reasonabl[y] considering all the circumstances" and that the alleged unreasonable performance prejudiced the defense.[30]  The essential question is whether counsel made mistakes so crucial that they were not functioning at the level guaranteed by the Sixth Amendment, thereby depriving defendant of a fair trial.[31]

Because a defendant must prove both parts of an ineffectiveness claim, a court may dispose of a claim by first determining that the defendant cannot establish prejudice.[32]  The first consideration in the "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected."[33]  "It is not enough to 'show that the errors had some conceivable effect on the outcome of the proceeding.'"[34]  Defendant must show a reasonable probability of a different result (i.e., acquittal) but for trial counsel's alleged errors.[35]

---

[28]  *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[29]  *State v. Fithian,* 2016 WL 3131442 at * 3 (Del. Super. May 25, 2016) (citing *Premo*, 562 U.S. at 120-122).
[30]  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).
[31]  *Id*.
[32]  *Strickland,* 466 U.S. at 697.
[33]  *Frey v. Fulcomer*, 974 F.2d 348, 358 (3rd Cir. 1992).
[34]  *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 693).
[35]  *Strickland*, 466 U.S. at 695.

In any motion for postconviction relief, this Court must first determine whether a defendant has satisfied the procedural requirements of Superior Court Criminal Rule 61 before giving consideration to the merits of the underlying claims.[36] Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after the judgment of conviction is final.[37] Rule 61(i)(2) prohibits the filing of repetitive motions for postconviction relief, unless: under Rule 61(d)(2)(i), the movant "pleads with particularity that new evidence exists that creates a strong inference" of actual innocence; or, under Rule 61(d)(2)(ii),"that a new rule of constitutional law, made retroactive to cases on collateral review," applies to the movant's case.[38]

Rule 61(i)(3) provides that "any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows (a) cause for relief from the procedural default and (b) prejudice from the violation of movant's rights."[39]

---

[36] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (quoting *Shelton v. State,* 744 A.2d 465, 474 (Del. 1999)).

[37] Super. Ct. Crim. R. 61(i)(1). A judgment of conviction is final "when the Supreme Court issues a mandate or order finally determining the case on direct review." *State v. Drake*, 2008 WL 5264880, at *1 (Del. Super. Dec. 15, 2008). Rule 61(i)(1) also affords a Defendant an opportunity to present a motion which "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court." *Id.* Because Defendant has not claimed a newly recognized retroactively applicable right applies to this second postconviction motion, this exception is inapplicable.

[38] Super. Ct. Crim. R. 61(i)(2).

[39] Super. Ct. Crim. R. 61(i)(3).

Rule 61(i)(4) provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[40]

Rule 61(i)(5) provides that the procedural bars provided in Rules 61(i)(1)-(4) do not apply to a claim that the Court lacked jurisdiction or if the Defendant satisfies the pleading requirements of Rule 61(d)(2)(i) or (d)(2)(ii).[41]

Defendant's present Motion for Postconviction Relief was filed on January 12, 2023.[42] Defendant's judgment of conviction became final on July 23, 2021 when the Delaware Supreme Court issued its mandate.[43] Pursuant to Rule 61(i)(1), Defendant's Motion was filed more than one year after the Delaware Supreme Court issued its mandate, and is time-barred. Moreover, Defendant has failed to allege any facts implicating the exception to Rule 61(i)(1)'s procedural bar.[44] Pursuant to Rule 61(i)(1), Defendant's untimely Motion is procedurally barred.

Defendant's Motion is also procedurally barred as repetitive pursuant to Rule 61(i)(2), as this is Defendant's second postconviction Motion. Defendant could

---

[40] Super. Ct. Crim. R. 61(i)(4).
[41] Super. Ct. Crim. R. 61(i)(5).
[42] DI 82.
[43] DI 80. Mandate of the Delaware Supreme Court.
[44] Super. Ct. Crim. R. 61(i)(1). To avoid the procedural bar, Defendant must "allege facts supporting a claim that there exists a retroactively applicable right that is newly recognized after the judgment of conviction was final, more than one year after the right was first recognized by the Delaware Supreme Court or the U.S. Supreme Court." *Id*.

potentially overcome this procedural bar by demonstrating the Motion satisfies the pleading requirements of Rule 61(i)(2), but Defendant has failed to plead with particularity that new evidence exists which creates a strong inference that he is factually innocent,[45] and he has not pled with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the Delaware Supreme Court or the U.S. Supreme Court, applies to his case and renders his conviction invalid.[46] Because Defendant has not met the exacting pleading standards of Rule 61(i) and Rule 61(d)(2), this second postconviction Motion is procedurally barred as repetitive.

Defendant's Motion is also procedurally defaulted pursuant to Rule 61(i)(3), as all of his present claims, except for his claims that the jury instructions were deficient, and that trial counsel should have filed for a Bill of Particulars, were not asserted in the proceedings leading to the judgment of conviction.[47] Defendant has failed to explain why he failed to timely raise these claims, and he has not pled specific prejudice from the failure to do so.[48]

---

[45] *Id.*

[46] Super. Ct. Crim. R. 61(i)(2); Super. Ct. Crim. R. 61(d)(2)(i)-(ii).

[47] Defendant raised the deficient jury instruction claim in the points raised in direct appeal to the Delaware Supreme Court, and the Bill of Particulars claim in his first motion for postconviction relief.

[48] *See* Super. Ct. Crim. R. 61(i)(3)(A) and Super. Ct. Crim. R. 61(i)(3)(B).

Pursuant to Rule 61(i)(4), Defendant's jury instruction and bill of particulars claims are procedurally barred because they were formerly adjudicated on direct appeal and in the first Motion for Postconviction Relief.[49]

Finally, the Defendant could potentially have avoided the applicability of the procedural bars in Rule 61(i)(1)-(4) if he presented valid claims (1) asserting that the Court lacked jurisdiction or he (2) pled with particularity that (a) new evidence exists that creates a strong inference that Defendant is innocent in fact of the charged offenses, or that (b) a new rule of constitutional law made retroactive on cases on collateral review by the United States Supreme Court or the Delaware Supreme Court applies to his case and makes his conviction invalid.[50]  Defendant has not argued the applicability of Rule 61(i)(5) and Rule 61(d)(2) to avoid the procedural bars noted *supra*, and his motion is procedurally barred as untimely and repetitive. As a result of Defendant's failure to overcome Rule 61(i)'s procedural bars, I recommend Defendant's claims be summarily dismissed.

Despite the procedural bars to Defendant's Motion, I will briefly address the merits of Defendant's claims.  As noted previously, Defendant's claims are overlapping and convoluted, and fail to demonstrate prejudice under *Strickland's* exacting standards.

---

[49]  *See Hearne v. State,* 2017 WL 6336910, at *3 (Del. Dec. 11, 2017); *State v. Hearne*, 2020 WL 7093407 (Del. Super. Dec. 4, 2020), aff'd *Hearne v. State*, 2021 WL 2826451 (Del. July 7, 2021).
[50]  *See* Super. Ct. Crim. R 61(d)(2).

**Claim 1: Statute of Limitations.**

Defendant argues that trial counsel was ineffective for "failing to realize that 13 charges of the indictment fell outside the time limitations."[51] Defendant's argument as to the applicability of the statute of limitations is misplaced, and the offenses for which he was convicted were not time-barred.

Prior to July 15, 1992, the statute of limitations applicable to all felony offenses committed in Delaware, except Murder, was five years.[52] So, *if committed* before 1992 (and Defendant's crimes were not), all of the crimes for which the State indicted the Defendant had a five-year statute of limitations.

On July 15, 1992, the General Assembly enacted the first of two amendments to 11 *Del. C.* § 205 by amending § 205(e), which contained a "first disclosure" clause. The version of § 205(e) implemented on July 15, 1992 provided:

> (e) If the period prescribed by subsection (b) of this section has expired, a prosecution for any sexual offense in which the accused acts include or constitute any of those crimes delineated in §§ 767-768 and § 1108 of this title where the victim of such sexual offense was a child under the age of 18, at the time of its occurrence, *such prosecution may be commenced within 2 years following an initial disclosure to the Delaware Division of Child Protective Services or to an appropriate law enforcement agency.*[53]

---

[51] DI 82, Motion for Postconviction Relief, p. 4.
[52] *Hoennicke v. State*, 13 A.3d 744, 746 n. 1 (Del. 2010) (citing 11 *Del. C.* §205(b)(1)).
[53] *Bryant*, 2001 WL 433452, at *1 (quoting 11 *Del. C.* § 205(e)). (emphasis added).

12

As indicated, the first disclosure clause was a tolling provision which permitted the prosecution of sexual offenses after the expiration of the five-year statute of limitations period if the prosecution commenced within two years of the minor victim's initial disclosure to Child Protective Services or a law enforcement agency.[54]

Approximately eleven years later, on June 24, 2003, the General Assembly amended 11 *Del. C.* § 205(e) a second time, striking the text of § 205(e) and replacing it with its current version. The current version of 11 *Del. C.* § 205(e), in effect since June 24, 2003, provides as follows:

> (e) Notwithstanding the period prescribed by subsection (b) of this section, a prosecution for any crime that is delineated in § 787 of this title and in which the victim is a minor, subpart D of subchapter II of Chapter 5 of this title, or is otherwise defined as a "sexual offense" by § 761 of this title except § 763, § 764 or § 765 of this title, or any attempt to commit said crimes, *may be commenced at any time.* No prosecution under this subsection shall be based upon the memory of the victim that has been recovered through psychotherapy unless there is some evidence of the corpus delicti independent of such repressed memory. This subsection applies to all causes of action arising before, on or after July 15, 1992, and to the extent consistent with this subsection, it shall revive causes of action that would otherwise be barred by the section.[55]

In 2010, the Delaware Supreme Court considered the applicability of the statute of limitations as it applied to sexual offenses in *Hoennicke v. State.*[56] In

---

[54] *Hoennicke*, 13 A.3d at 746.
[55] 11 *Del. C.* § 205(e) (emphasis added).
[56] *Hoennicke v. State*, 13 A.3d 744 (Del. 2010).

*Hoennicke*, the defendant was alleged to have committed a series of sexual assaults on his minor son between 1988 and 1992. Hoennicke's son did not report the sexual assaults committed by his father to the Delaware State Police until 2009.[57] In considering Hoennicke's statute of limitations claim, the Delaware Supreme Court concluded the State's ability to prosecute Hoennicke "was still within the two year 'extended disclosure' limitations period of the previous subsection (e) because [the victim] had not yet disclosed Hoennicke's alleged misconduct."[58] And, because Hoennicke's son did not disclose the sexual abuse committed by his father until the 2003 amendments to § 205(e) became operable, the Court concluded "the 2003 amendments clearly extended the previous limitations period of two years after reporting, *to an unlimited period*."[59]

Here, the twenty-one count Indictment alleges Defendant sexually abused the minor victim beginning in January 2003, up to late 2012. The Indictment alleges the Defendant committed Unlawful Sexual Contact Second Degree upon the minor victim from January 2003 through December 2004.[60] All other indicted crimes, including all Rape First Degree charges, were alleged to have occurred on or after January 1, 2004.[61] Like the defendant in *Hoennicke*, Defendant's prosecution was

---

[57] *Id.* at 745.
[58] *Id.* at 746.
[59] *Id.* at 747 (emphasis added).
[60] *See* Indictment, Counts I-IV. The Jury acquitted Defendant of Counts III and IV.
[61] *See* Indictment, Counts V-XXI.

not time-barred on the date of the 2003 amendment that extended the limitations period indefinitely, because Defendant's minor daughter had not yet reported the abuse to any law enforcement agency.[62] Therefore, the indefinite extension of the statute of limitations by the 2003 amendment to 11 *Del. C.* § 205(e) applies, and Defendant's statute of limitations argument is misplaced - all of the crimes for which the jury found the Defendant guilty were not time-barred, as the State could have commenced them "at any time."[63]

Hearne also argues that the State was required to include in the Indictment language consistent with the tolling provision in 11 *Del. C.* § 205(e), namely that the prosecution was not based on the memory of the victim that had been recovered through psychotherapy without some additional evidence of the corpus delicti independent of the victim's repressed memory. Hearne asserts that trial counsel's failure to "subject [the] indictment to scrutiny for any defects shows ineffective assistance of counsel." Hearne's argument is misplaced.

As alleged in the Indictment, Counts I-IV are the only counts which allege conduct which may have occurred prior to the 2003 amendments to § 205(e), and the jury did not find the Defendant guilty of Counts III and IV. A review of the Indictment reveals the State did not address this tolling provision in the Indictment.

---

[62] *See Hoennicke*, 13 A.3d at 747.
[63] *See* 11 *Del. C.* § 205(e).

In Counts I-IV, Defendant's unlawful sexual contact of his minor daughter is alleged to have occurred on or between January 1, 2003 through December 31, 2004.[64] Therefore, the first four counts of the Indictment (Unlawful Sexual Contact Second Degree in violation of 11 *Del. C.* § 768) may have been subject to the five-year statute of limitations in effect as a result of the 1992 amendment to § 205(e), if they occurred prior to June 24, 2003.[65] The State could commence prosecution of the remaining counts of the Indictment which were alleged to have occurred after June 24, 2023 "at any time," as those offenses (Counts V-XXI) were subject to an unlimited limitations period.

The tolling provision upon which Defendant relies is an anomaly. It imposes a specific burden of proof upon the State if it seeks to prosecute a defendant based on the admission of a victim's psychotherapeutically refreshed testimony. If the State does so, they are also required to produce evidence supporting the corpus delicti independent of the victim's psychotherapeutically refreshed testimony to satisfy its burden of proof. The tolling provision is not triggered by an event in time, and it remains inert if the State does not rely on a victim's psychotherapeutically refreshed testimony. Unlike this tolling provision, other

---

[64] All remaining indicted offenses, Counts V-XXI, were alleged to have occurred no earlier than January 1, 2004.
[65] Because the evidence presented at trial did not specify dates on which the first four counts of the Indictment occurred, the Court will presume, for the sake of argument, they occurred in the relevant time period of January 1, 2003 through June 24, 2003.

16

tolling provisions found in 11 *Del. C.* § 205 are connected to a time limitation – for example, if a defendant had not been prosecuted within five years of the commission of a sexual offense, the tolling provision of the former version of § 205(e) suspended the running of the statute of limitations, and required the State to prosecute a Defendant within two years of disclosure to the Delaware Division of Child Protective Services or a law enforcement agency.

The purpose of a tolling provision is to suspend the running of the statute of limitations. Here, all crimes Defendant committed after June 24, 2003, are subject to an unlimited statute of limitations. And if the limitations period is "unlimited," there is no purpose for a tolling provision – the provision does not become operative because there is no limitations period to toll.[66] Therefore, Defendant's claim as to any charged offense alleged to have occurred after June 24, 2003 does not constitute an actual controversy. The tolling provision only applies to pre-2003 offenses previously subject to a five-year statute of limitations, i.e., Counts I-IV of the Indictment. And, Counts III and IV resulted in not guilty jury verdicts.

Defendant cannot demonstrate prejudice under *Strickland* – a reasonable probability of a different result at trial - from counsel's failure to object to the State's

---

[66] *See Huffman v. State*, 2015 WL 4094234, at *3 (Del. July 6, 2015) ("We concluded [in Hoennicke] that the *unlimited statute of limitations period* as applied to appellant's offenses did not violate the *Ex Post Facto* Clause because it simply extended the statute of limitations and did not revive a prosecution where the statute of limitations had already expired.")

omission of the tolling provision in the Indictment. Even if counsel successfully objected to those counts, the same objection would not have applied to Counts V-XXI, and the Defendant was sentenced to seven life sentences without the possibility of release for the Rape First Degree convictions, plus more than eighty years of incarceration on the remaining convictions.[67] Because Defendant is unlikely to serve out the seven life sentences, his claim does not present an "actual controversy."[68]

Moreover, Defendant suffered no prejudice. The record reflects the State's evidence presented at trial was not solely based upon a memory of the victim recovered through psychotherapy. The record reflects that the victim's disclosure of sexual abuse was a delayed report of a series of sexual assaults which Defendant perpetrated over almost a decade, and her testimony was corroborated, at least in part, by several other State's witnesses. There is no record evidence that the prosecution was solely based upon a memory of the minor victim recovered through psychotherapy, and as discussed *supra*, there was additional circumstantial and corroborating evidence produced by the State at trial to establish corpus delicti sufficient to support Defendant's convictions.

---

[67] DI 36, Sentence Order.

[68] *See Govan v. State*, 2003 WL 22227548, at *1 (Del. Sept. 24, 2003), *State v. Govan*, 2010 WL 3707416 (Del. Super. Aug. 31, 2010).

**Claim 2: Victim's memory was recovered through psychotherapy.**

Defendant next claims the minor victim's memory was recovered through psychotherapy, and as a result the State was required to produce "some evidence of the corpus delicti independent of such repressed memory."[69] Defendant argues the State failed to produce evidence beyond the victim's psychotherapeutically recovered memory. Defendant's argument is not supported by the record.

There is no evidence to support Defendant's claim that the minor victim's memory was recovered through psychotherapy, and the Defendant has not identified any testimony or evidence to support his claim. The minor victim's uncontradicted trial testimony is that she discussed the sexual abuse she suffered at the hands of the Defendant in early 2016, when she made a disclosure to her then-boyfriend.[70] Specifically, when asked why she did not say anything about the sexual abuse, she testified as follows:

> It was – I was just it was my dad, like, it was just, like, weird, like, I knew it wasn't supposed to happen, but it was still my dad. I didn't say anything until, like, it was just as I got older it started to bother me more and more. I finally, like, when I broke down, told my boyfriend at that time, and like, ever since then I had told him he was always encouraging me to tell someone, So I finally did.[71]

---

[69] *See* 11 *Del. C.* § 205(e).
[70] DI 32, Jan. 20, 2017 Trial Transcript, p. 23, l. 19 – p. 24, l. 11.
[71] *Id.*, p. 58. L. 6-14.

Her boyfriend then encouraged her to tell someone else, and she then disclosed the sexual abuse to her mother.[72] Her mother then made her an appointment to speak to a therapist, and the victim was eventually interviewed by the New Castle County Police in the spring of 2016.[73] There is no record evidence which supports Defendant's claim the minor victim's memory was recovered through psychotherapy, and the State produced additional circumstantial and corroborative evidence to satisfy the corpus delicti.[74]

**Claim 3: Inadequate Jury Instructions.**

Defendant's jury instruction claim is premised on the same facts as the Statute of Limitations argument—that there was a defect in the Indictment which required the State to include an additional element as to certain charged offenses. Defendant carries this argument through to the jury instructions, but here he argues counsel was ineffective for failing to request the Court amend the jury instructions to specifically reference the tolling provision of the 2003 version of 11 *Del. C.* § 205(e). Defendant's claim lacks record support and he cannot demonstrate prejudice, because the victim's testimony was not recovered through psychotherapy, and the

---

[72] *Id.*
[73] *Id.*, p. 89, l. 1-9.
[74] On cross-examination, Defendant's counsel elicited testimony from the minor victim that she had been seeing therapist to address "disagreements" between the minor victim and her mom, but the minor victim specifically testified she first disclosed Defendant's sexual abuse to her mom, who then informed the therapist of the sexual abuse. See DI 32, Trans. P. 89, l. 23 – p. 91, l. 22. There is no record testimony that the minor victim's testimony was recovered through psychotherapy.

20

State produced evidence to satisfy the corpus delicti. And, Defendant's jury instruction claim was considered and rejected by the Delaware Supreme Court on direct appeal. In considering Defendant's claim on direct appeal, the Delaware Supreme Court conducted an independent review of the jury instructions and subsequently opined:

> "[W]e reviewed the jury instructions for reversible error and found none. The jury instructions provided the jury with a correct statement of the law and a full explanation of the elements of each offense."[75]

Defendant's claim is unavailing.

**Claim 4: Counsel lacked knowledge of the law and failed to prepare a viable defense; failure to consult an expert; failure to consider alternative defenses.**

Defendant presents factually unsupported accusations – counsel didn't understand the rules and principles of court; counsel did not obtain a bill of particulars; counsel failed to investigate and enlist the assistance of an expert; and counsel failed to consider alternative defenses. But, Defendant does not identify how any of counsel's alleged failures prejudiced his defense. He does not identify which court rules counsel did not understand. He does not identify a specific defense, or identify an expert witness whose testimony would have resulted in an acquittal – demonstrating Defendant was actually innocent of the charged offenses. A defendant must make specific allegations of actual prejudice and substantiate them

---

[75] *Hearne*, 2017 WL 6336910, at *3.

or risk summary dismissal.[76]  Defendant's bald accusations of ineffective assistance of counsel do not establish prejudice.  Defendant's claim is meritless.

**Claim 5:  Insufficient Evidence**

Defendant claims the evidence was insufficient to sustain a conviction.  He argues the minor victim's memory was "recovered through psychotherapy" and the State failed to present "some evidence of the corpus delicti independent of such repressed memory."[77]  Defendant argues "none of the evidence presented during the trial can corroborate any elements of the crimes that were brought against the Defendant by indictment."[78]

When a defendant challenges the sufficiency of the evidence, this Court considers whether a rational trier of fact viewing the evidence in the light most favorable to the prosecution could find, beyond a reasonable doubt, the existence of every element of the crimes charged.[79]  In the context of sexual assault prosecutions, "[i]t is well settled law that a victim's testimony concerning alleged sexual contact alone is sufficient to support a jury's verdict.  There is no requirement that testimonial evidence be corroborated either by physical evidence or corroborating testimony."[80]

---

[76] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998), (citing *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996), cert. denied 517 U.S. 1249 (1996).
[77]  DI 82, p. 27-28.
[78]  DI 82, p. 36.
[79] *Jenkins v. State*, 2008 WL 4659805, *2 (Del. Oct. 22, 2008).
[80] *Hardin v. State*, 840 A.2d 1217, 1224 (Del. 2003).

The State's burden of proof is to prove a defendant's guilt beyond a reasonable doubt.[81] To do so, the State must produce, at trial, "some credible evidence tending to prove each element of the offense."[82] The Delaware Supreme Court has "never precisely defined the specific quantum of independent evidence required by the State to establish the corpus delicti."[83] As is noted above, the State can satisfy this burden through the testimony of the minor victim. But, a review of the record in this case demonstrates the State produced circumstantial and corroborative evidence at trial, beyond the credible testimony of the Defendant's minor victim, to support the jury's guilty verdicts.

The minor victim testified that she was sexually abused by her father beginning around the ages of three or four years old.[84] She recalled that at that time, the Defendant brought her into the basement of their home in Stanton, Delaware and took off all of her clothing and his pants.[85] He rubbed her genitals with his hand and made her touch his genitals.[86] She recalled that the Defendant took her into the basement on another occasion, began playing a "porno tape," and "was touching me and made me touch him."[87]

---

[81] 11 *Del. C.* § 301(b).
[82] 11 *Del. C.* § 301(a).
[83] *Wright*, 953 A.2d at 192-93 (quoting *Bailey v. State*, 2007 WL 1041748, at *3 (Del. Apr. 9, 2007)).
[84] DI 32, Jan. 20, 2017 Trial Transcript, p. 24, l. 18 to p. 25, l. 3.
[85] *Id.*
[86] *Id.*, p. 26, l. 3-15.
[87] *Id.,* p. 28, 8-21.

After a passage of time, and after the Defendant moved out of the Stanton residence, the Defendant moved into his mother's residence in Hockessin. The victim, then aged five or six, recalled the following:

> I would pretty much every night I stayed over, and everyone would go to sleep. He would, like, I would stay down in the living room with him, and he would just, like, do the same thing, but as I got older, like, he would make me give him oral sex. He would give me oral sex.[88]

The victim indicated this sexual abuse would happen every time she stayed at her grandmother's house with Defendant.[89] She recalled that around the time she turned seven years old, the Defendant would "give her oral" and digitally penetrate her vagina.[90] He also would tell her she "did a good job last night" and told her not to tell anyone, saying "you won't tell anybody, right, this is our secret."[91]

The victim recalled around the time she was in first grade, the Defendant sexually assaulted her in his bedroom in her grandmother's house.[92] When the Defendant moved into this house, the minor victim would sleep in the same bed as the Defendant.[93] When she was in the fourth or fifth grade, she recalled the Defendant babysitting her at her mother's residence, and "the whole night he was just making me, like, give him oral sex, giving [her] oral sex."[94] On another

---

[88] *Id.*, p. 31, l. 10-15.
[89] *Id.*, p. 31, l. 16 to p. 32, l. 22.
[90] The victim performed oral sex on the Defendant at least twenty times. DI 32, p. 36, l. 6-10.
[91] *Id.*, p. 34, l. 22 to p. 35, l. 6.
[92] *Id.*, p. 37, l. 17-19.
[93] *Id.*, p. 38, l. 5-11.
[94] *Id.*, p. 41, l. 11-14.

occasion, when she was seven or eight years old, she recalled the Defendant returned from Tennessee to Delaware and was staying at a Red Roof Inn.[95] Defendant took her to the motel, and at the motel, the Defendant had her wear an adult bra and women's underwear – a white lace thong.[96] She recalled being "so little [the bra and panties] didn't even fit."[97] At the Red Roof Inn the Defendant "had a friend [come] over, and he brought some kind of drugs, then he was smoking it and, like, he tried, like, he, like, lit it for me, like, I don't think I inhaled it or anything, Then he, like, touched me and stuff."[98]

When asked if the victim recalled the Defendant recording her with a video camera, she did not remember it, but she recalled one occasion in her grandmother's house, in Defendant's bedroom, where she saw herself on a TV.[99] She also recalled seeing photographs of herself, naked, but did not specifically recall being video recorded.[100] She believed the Defendant had oral sex with her over fifty times, assaulted her with a vibrator, and recalled several parking lots in New Castle County where the Defendant would sexually assault her.[101] The minor victim believed the sexual abuse stopped when she was approximately twelve years old.[102]

---

[95] *Id.*, p. 42, l. 17-21.
[96] *Id.*, p. 44, l. 22.
[97] *Id.*, p. 42, l. 20-21.
[98] *Id.*, p. 43, l. 21 to p. 44, l. 2.
[99] *Id.*, p. 45, l. 8-10.
[100] *Id.*, p. 45, l. 8-21.
[101] *Id.,* p. 49, l. 6- p. 51, l.23.
[102] *Id.*, p. 52, l. 17-19.

Portions of the victim's testimony were corroborated by the State's trial witnesses. Stephanie Digrerio, a former girlfriend of the Defendant, was living with the Defendant in Tennessee when she found a videocassette in a vehicle which contained video recordings of the victim around the ages of seven or eight, wearing only adult woman's underwear and a bra. According to Ms. Digrerio, Defendant was recording the video, as she heard his voice asking the minor victim to turn around on the recording.[103] Ms. Digrerio recalled the minor victim was wearing black thong underwear in the video.[104]

Ms. Digrerio then gave the video recording to the Defendant's brother's wife, and a few days later Ms. Digrerio confronted the Defendant about the content of the video.[105] In response, the Defendant became apologetic, did not want Ms. Digrerio to leave him, was sorry for what he did, and claimed it "was the drugs and that he had no desire to ever do it again. And it was that one time."[106]

Defendant's brother, Thearon Hearne, testified that the Defendant came to live with him in Tennessee around 2007.[107] Thearon Hearne recalled that Ms. Digrerio brought a VHS-type tape over to his house, and he viewed "moments of the

---

[103] DI 35, Jan. 19, 2017 Trial Transcript, p. 34, l. 20-23.
[104] *Id.*, p. 35, l. 17.
[105] *Id.*, p. 37, l. 16-23.
[106] *Id.*, p. 38, l. 6-9. Ms. Digrerio also recalled a time when the Defendant stayed with his children at a Red Roof Inn. *Id.*, p. 41, l. 18-23.
[107] *Id.*, p. 113, l. 14-20.

tape."[108] After viewing two short portions of the recording, Thearon Hearne recalled seeing the minor victim, his niece, "on all four positions on the bed, it was sort of, with a face down on the bed."[109] The video also depicted his niece "wearing an adult thong that clearly didn't fit."[110] Thearon Hearne recognized the room where the video was recorded as the master bedroom of his mother's house in Delaware.[111] When he confronted the Defendant about the video tape, the Defendant told him "I never touched her. And I was drunk and high and I just made the film. And it was a one-time thing."[112]

The victim's brother, Marcus Hearne, corroborated the victim's testimony that she and the Defendant repeatedly slept in the same bed. He explained it was common that the Defendant and victim would "just go into his room and hang out," and they had "shared living arrangements" – they would sleep in the same bed or on the couch together.[113] Marcus remembered a time when the victim and Defendant sleeping in the same bed when he stayed with his father and sister at "Dave's house," and he needed to wake up the Defendant and victim, who were in the same bed in the morning, because he was going to be late for school.[114] He also recalled a time

---

[108] *Id.*, p. 117, l. 3-23.
[109] *Id.*, p. 120, l. 1-2.
[110] *Id.*, p. 120, l. 7-8; *Id.*, p. 124, l. 3-11.
[111] *Id.*, p. 120, l. 15-23; p. 121, l. 121, l. 1. Thearon Hearne testified he destroyed the video recording. *Id.*, p. 122, l. 10-23.
[112] *Id.*, p. 123, l. 16-19.
[113] *Id.*, p. 162, l. 18 to p. 162, l. 17.
[114] *Id.*, p. 181, l. 17-23, p. 182, l. 19.

when the Defendant stayed at a Red Roof Inn in Delaware, and the victim spent the night with Defendant at the motel.[115] Marcus Hearne recalled Defendant repeatedly asking the minor victim specific questions regarding whether she brought her panties for visits.[116]

The minor victim's testimony regarding the alleged sexual contact was alone sufficient to form the basis of a conviction for all convicted offenses, and the Defendant has failed to identify any offense resulting in a conviction where the victim's testimony did not establish every element of the offense. The jury found the minor victim's testimony credible, and the State's other witnesses corroborated portions of the minor victim's testimony. Defendant's sufficiency of the evidence claim is unsupported by the record, and he cannot demonstrate prejudice.

## CONCLUSION

Defendant's second postconviction motion is procedurally barred. It is time barred and repetitive. Moreover, two of Defendant's claims are procedurally barred as they were previously raised in his direct appeal or in his first postconviction motion. The remaining claims are procedurally barred because Defendant failed to present the claims during trial, on direct appeal, or in a prior postconviction

---

[115] *Id.*, p. 168, l. 14 to p. 169, l. 4.
[116] *Id.*, p. 174, l. 21 to p. 176, l. 1.

proceeding. The claims are also meritless, legally deficient and unsupported by the trial record.

For all of the aforestated reasons, I recommend the Motion for Postconviction Relief should be **SUMMARILY DISMISSED.**

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
Commissioner Martin B. O'Connor

oc:    Prothonotary